IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ull D.C.

05 JUL -6 AM 11: 48

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

| | |
|---|---|
| MARILYN JOHNSON, et al., | )<br>)<br>) |
| Plaintiff, | )<br>) |
| v. | ) Case No. 00-2608 DV |
| CITY OF MEMPHIS, | )<br>) |
| Defendant. | )<br>)<br>) |

## ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

Before the Court is Defendant's motion for partial summary judgment (dkt. # 340) as to the non-African-American Plaintiffs' ("white Plaintiffs") claims of violations of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), the Tennessee Human Rights Act, Tenn. Code Ann. § 4-21-401 ("THRA"), 42 U.S.C. § 1981 ("§ 1981"), and the Equal Protection clause of the Fourteenth Amendment to the United States Constitution ("Equal Protection clause"), brought via 42 U.S.C. § 1983, with regard to the 2000 promotional process. Defendant also seeks partial summary judgment as to the Equal Protection clause claim that is based on a "class of one" theory with regard to both the 2000 promotional process and the 2002 promotional process as to all Plaintiffs. Moreover, Defendant requests summary judgment as to Plaintiffs' claim for negligence. Finally, Defendant seeks summary judgment as to Plaintiffs' claims under City laws. For the following reasons, the Court **GRANTS IN PART AND DENIES IN PART** Defendant's motion for partial summary judgment.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs are police officers who were denied promotions to sergeant during a promotional

This document entered on the docket sheet in compliance
with Rule 58 and/or 79(a) FRCP on _____

process administered by Defendant. In the 2000 promotional process, Defendant relied on a test which originally included four factors: a written test, a practical test, performance evaluations, and seniority. Those passing the written test were then required to take the practical test. Finally, Defendant would consider performance evaluations and seniority. Each of the four factors were to be weighted to calculate a total score. The weights assigned to the factors were: 20 percent for the written test, 50 percent for the practical test, 20 percent for performance evaluations, and 10 percent for seniority.

In scoring the written test, Defendant first applied a "cut score" of 70. Those making a score of 70 or above were considered to have passed the exam; candidates with scores below 70 were not permitted to move to the next step of the process. However, when Defendant applied the cut score of 70, disparate impact to African-American candidates resulted. Therefore, Defendant adjusted the cut score to 66. As such, anyone scoring 66 or higher was considered to have passed the written test and was allowed to continue in the promotional process by taking the practical test. The 66 and above score was determined to be the score needed to ensure that the results satisfied the Equal Employment Opportunity Commission's ("EEOC") four-fifths rule.[1]

The second step was the practical test. However, during the administration of the practical test, Defendant discovered that certain applicants had received study materials that others did not receive. In response, Defendant eliminated the practical test entirely and relied on the written test, performance evaluations, and seniority to make its promotional decisions. Thus, the weight

---

[1] To determine whether scores satisfy the four-fifths rule: first, a passing rate for African Americans is calculated by dividing the number of African Americans passing the test by the total number of African Americans who took the test. The same is done for white candidates. The passing rate for African Americans is then divided by the passing rate for white candidates to get a selection rate. If the selection rate is below eighty percent, the cut score results in adverse impact under the EEOC's four-fifths rule.

2

distribution among each of the three remaining factors was adjusted to allow for the elimination of the practical test. As such, the weight assigned to the written test went from 20 percent to 45 percent, as did the weight assigned to performance evaluations. Based on the three factors, Defendant promoted the top 63 candidates. Officers who had been denied promotions then filed this suit (Johnson 1), alleging discrimination pursuant to 42 U.S.C. §§1981 and 1983, Tenn. Code Ann. § 4-21-401, the Fourteenth Amendment's Equal Protection clause, city ordinances, and Title VII of the Civil Rights Act, 42 U.S.C. § 2000e.

In the 2002 promotions, it was discovered that promotions based on the testing process would have a disparate impact on African-American candidates. However, promotions were made based on the test scores in spite of that knowledge. Officers who were denied promotions brought two suits, Billinsley v. City of Memphis, Case No. 04-2013, and Johnson v. City of Memphis (Johnson 2), Case No. 04-2017. The three cases were consolidated on October 27, 2004.

On May 27, 2005, Defendants filed the instant motion for partial summary judgment.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ. P. 56(c). In other words, summary judgment is appropriately granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).

3

The party moving for summary judgment may satisfy its initial burden of proving the absence of a genuine issue of material fact by showing that there is a lack of evidence to support the nonmoving party's case. Id. at 325. This may be accomplished by submitting affirmative evidence negating an essential element of the nonmoving party's claim, or by attacking the opponent's evidence to show why it does not support a judgment for the nonmoving party. 10a Charles A. Wright et al., Federal Practice and Procedure § 2727, at 35 (2d ed. 1998).

Facts must be presented to the court for evaluation. Kalamazoo River Study Group v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999). The court may consider any material that would be admissible or usable at trial. 10a Charles A. Wright et al., Federal Practice and Procedure § 2721, at 40 (2d ed. 1998). Although hearsay evidence may not be considered on a motion for summary judgment, Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 927 (6th Cir. 1999), evidentiary materials presented to avoid summary judgment otherwise need not be in a form that would be admissible at trial. Celotex, 477 U.S. at 324; Thaddeus-X v. Blatter, 175 F.3d 378, 400 (6th Cir. 1999).

In evaluating a motion for summary judgment, all the evidence and facts must be viewed in a light most favorable to the nonmoving party. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986); Wade v. Knoxville Utilities Bd., 259 F.3d 452, 460 (6th Cir. 2001). Justifiable inferences based on facts are also to be drawn in favor of the non-movant. Kalamazoo River, 171 F.3d at 1068.

Once a properly supported motion for summary judgment has been made, the "adverse party may not rest upon the mere allegations or denials of [its] pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ. P. 56(e). A genuine issue for trial

4

exists if the evidence would permit a reasonable jury to return a verdict for the nonmoving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). To avoid summary judgment, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586.

## III. ANALYSIS

### A. Intentional Race Discrimination against White Plaintiffs

Defendant asserts that the white Plaintiffs were not discriminated against based on race in violation of Title VII, the THRA, § 1981, or the Equal Protection clause, through 42 U.S.C. § 1983. Plaintiffs argue that the white Plaintiffs received disparate treatment in the promotional process and were thus intentionally discriminated against because of their race.

An employee alleging disparate treatment must show a discriminatory motive in order to prevail on a discrimination claim. Such proof can be established by direct evidence or may be inferred from a *prima facie* showing of discrimination. Huguley v. General Motors Corp., 52 F.3d 1364, 1370 (6th Cir. 1995). "[D]irect evidence is that evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor" in the adverse employment decision at issue. Price Waterhouse v. Hopkins, 490 U.S. 228, 247 (1989); Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F. 3d 921, 926 (6th Cir. 1999) (citations omitted). Evidence is direct when, if believed, it would prove the existence of a fact without any inferences or presumptions. Lautner v. AT&T, 1997 U. S. App. Lexis 1267, at *8 (6th Cir. 1997); Norbuta v. Loctite Corp., 2001 WL 45114, at *7 (6th Cir. 2001). If the plaintiff provides credible direct evidence of discriminatory animus, the burden of persuasion shifts to the defendant to establish by a preponderance of the evidence "that it would have terminated the plaintiff's employment [even]

5

had it not been motivated by discrimination." Jacklyn, 176 F. 3d at 926. Thus, the employer must do more than merely "articulate" its nondiscriminatory reason for its action. Blalock v. Metals Trade, Inc., 775 F.2d 703, 710 (6th Cir. 1985).

Here, Plaintiffs have proffered no direct evidence of discriminatory animus. Plaintiffs have not alleged that anyone at any time heard any of Defendant's representatives make any discriminatory comments or any statements regarding actions taken for discriminatory reasons. Therefore, Plaintiffs must proceed with a *prima facie* showing of discrimination.

If an employee seeks to make a *prima facie* showing of discrimination, the evidentiary framework established by the United States Supreme Court in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973), applies. See Texas Depart. of Cmty. Affairs v. Burdine, 450 U.S. 248 (1981); McDonald v. Union Camp Corp., 898 F.2d 1155, 1159 (6th Cir. 1990). Under the McDonnell Douglas burden-shifting framework, the plaintiff must prove a *prima facie* case of discrimination by a preponderance of the evidence. Wilson v. Stroh Co., Inc., 962 F.2d 942, 945 (6th Cir. 1992). If the plaintiff succeeds, the burden of production shifts to the defendant to articulate a legitimate, non-discriminatory reason for the adverse employment action. Burdine, 450 U.S. at 253. Once the employer provides a legitimate, non-discriminatory reason for the adverse employment action, the plaintiff may still prevail if evidence has been proffered that tends to disprove the reasons offered by the defendant. Kline v. Tennessee Valley Auth., 128 F.3d 337, 347 (6th Cir. 1997). However, even if the plaintiff proves the employer's proffered reason is pretext, he nonetheless bears the ultimate burden of proving that a discriminatory intent motivated the defendant's action. St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 507 (1993).

Balancing group interests is a challenging but worthy task. In the instant case, both

Plaintiffs and Defendant cite Zambetti v. Cuyahoga Comm. College, 314 F.3d 249 (6th Cir. 2002), to note that a white plaintiff must "demonstrate that 'background circumstances support the suspicion that the defendant is that unusual employer who discriminates against the majority'" Zambetti, 314 F.3d at 256 (quoting Murray v. Thistledown Racing Club, Inc., 770 F.2d 63, 67 (6th Cir. 1985)). To establish background circumstances which support such a suspicion, the plaintiff can proffer evidence that the defendant has unlawfully considered race as a factor in hiring in the past. Id.

From 1988 through 2000, the Defendant conducted three sergeant promotion processes. Pfs.' Response in Opp. to Def. Mot. for Summ. J at 10. In Defendant's 1988 and 1989 selection process, the test and promotion procedures used was not validated as being job-related. Id. Few African Americans were selected for promotion under this invalidated testing procedure. Id. The response to the disparate treatment of African Americans for promotion under this procedure was to halt certain white candidates with higher scores from promotions to institute an affirmative action program in favor of African Americans. Id. (citing Pfs. Ex. 10, Df. Rebuttal to Statm. of Facts, ##7 and 7.1, Ashton v. City of Memphis). Certain white candidates impacted by the affirmative action procedure were not promoted until nearly ten years later. Id. at 10-11. This counters Defendant's argument that disparate treatment cannot exist against both minority and non-minority plaintiffs in the same promotion process.

Defendant argues that the events of 1988 and 1989 are too remote to be considered as "background" evidence. Def.'s Reply Memo. in Support of Its Mot. for Part. Summ. J. at 6. The Court rejects this argument. Defendant further argues that its 1988 and 1989 affirmative action procedure should not be deemed unlawfully discriminatory because it was a remedial response to

7

two court approved consent decrees. Id. 6-7 (See Aiken v. City of Memphis, 37 F.3d 1155 (6th Cir. 1994)). Though the Aiken Court found that the City's use of race-based promotions in 1988 and 1989 were supported by a compelling governmental interest, upon remand the City's promotional goals were determined not to be "narrowly tailored." See Aiken, 37 F.3d at 1162-63, remanded to, Ashton v. City of Memphis, 49 F.Supp.2d 1051 (W.D.Tenn. 999). Though framed within a remedial context, the Court finds that Defendant's actions fall within that of the "unusual employer" that has considered race as a factor in hiring in the past with disparate treatment to whites to remedy its disparate treatment to African Americans. For purposes of surviving a motion for summary judgment, this creates a genuine issue of material fact as to whether the Defendant had discriminatory animus toward the white Plaintiffs in the case at bar.

Accordingly, Defendant's motion for partial summary judgment as to the white Plaintiffs' claim of discrimination is denied. Defendant may move at the close for relief.

    A.    Equal Protection

Defendant contends that Plaintiffs have failed to establish the requisite elements of an Equal Protection challenge under a "class of one" theory. Plaintiffs consent to refrain from pursuing a "class of one" Equal Protection claim for Plaintiffs from the 2002 promotional process. With respect to the 2000 promotional process, Plaintiffs allege that Defendant discriminated against them in violation of the Equal Protection clause of the Fourteenth Amendment to the United States Constitution. The threshold question in deciding an Equal Protection claim is the appropriate level of scrutiny to apply. Breck v. State of Michigan, 203 F.3d 392, 395 (6th Cir. 2000). In most instances, the legislature or decision maker only needs to show that the statute or decision bears some rational relationship to a legitimate state end. Id. "Departure from this rational relationship

8

test is permitted only when the challenged statute places burdens upon suspect classes of persons or on a constitutional right that is deemed to be fundamental." Id. (internal quotations omitted). In those cases, courts apply a strict scrutiny standard; that is, the decision maker must demonstrate that the race-based action was necessary to further a compelling governmental interest and is narrowly tailored to further that interest. Grutter v. Bollinger, 539 U.S. 306, 308 (2003).

In the instant case, Plaintiffs are police officers who did not get promoted. Police officers who do not get promoted are not a suspect class. Plaintiffs have not alleged that they are members of a suspect class in their response to this summary judgment motion. Nor have they alleged that a fundamental right is at issue. Thus, as Plaintiffs concede, a rational basis standard must be employed. Consequently, to establish a violation of Equal Protection, Plaintiffs must show that Defendant's decision not to promote them is not rationally related to any conceivable legitimate legislative purpose. Hadix v. Johnson, 230 F.3d 840, 843 (6th Cir. 2000) (citing Lehnhausen v. Lake Shore Auto Parts Co., 410 U.S. 356 (1973)). Under this standard, the decision not to promote Plaintiffs must be afforded a strong presumption of validity and "must be upheld as long as 'there is a rational relationship between the disparity of treatment and some legitimate government purpose.'" Id. (quoting Heller v. Doe, 509 U.S. 312 (1993)). Rational basis scrutiny requires only that there is an imaginable basis for the classification. See Breck, 203 F.3d at 395. The classification only needs to be rationally related to the goal or purpose of the classification, and the court does not assess the wisdom of the challenged regulation. Id.

In its June 21, 2005 Order Denying Plaintiffs' Motion for Partial Summary Judgment ("June 21, 2005 Order"), the Court held that Plaintiffs had not satisfied the heavy burden required under a rational basis standard. Thus, the Court finds that Plaintiffs have failed to establish the requisite

9

elements of an Equal Protection challenge under a "class of one" theory. Accordingly, the Court grants Defendant's motion for partial summary judgment as to Plaintiffs' Equal Protection claim, only with respect to Plaintiffs' "class of one" theory.

C. Negligence

Defendant asserts that the Tennessee Governmental Tort Liability Act ("GTLA") shields it from liability for Plaintiffs' negligence claim. Section 29-20-205 of the Tennessee Code Annotated states that,

> [i]mmunity from suit of all governmental entities is removed for injury proximately caused by a negligent act or omission of any employee within the scope of his employment except if the injury arises out of:
>
> (1) the exercise or performance or the failure to exercise or perform a discretionary function, whether or not the discretion is abused.

Tenn. Code Ann. § 29-20-205. Defendant argues that the acts complained of are discretionary functions of the City and that therefore, the City is immune from liability.

Plaintiffs maintain that the acts in question were not discretionary. Thus, Plaintiffs argue, immunity was removed. The Tennessee Supreme Court has adopted the "planning-operational" test to determine whether a municipality's act is within the scope of the "discretionary function" immunity. Bowers v. City of Chattanooga, 826 S.W.2d 427, 430 (Tenn. 1992). Under this test, the City may not be held liable for deliberate, policy-like decisions made within its discretion, but it may be held liable for decisions that were purely functional or operational. Id. Because to a greater or lesser degree, every act involves some discretion, under the planning-operational test, discretionary function immunity does not attach automatically to every act involving choice or judgment. Williams v. Shelby County Health Care Corp., 803 F.Supp. 1306, 1315 (W.D. Tenn. 1992). "Rather, the underlying policy of governmental immunity is better served by examining (1) the

10

decision-making process and (2) the propriety of judicial review of the resulting decision." Id. If an act is chosen after consideration or debate by those charged with planning or creating policies, it strongly suggests that the decision is discretionary. Id. "These decisions often result from assessing priorities; allocating resources; developing policies; or establishing plans, specifications, or schedules." Id.

On the other hand, when a decision is based on "preexisting laws, regulations, policies, or standards, [it] usually indicates that its maker is performing an operational act. Similarly operational are those ad hoc decisions made by an individual or group not charged with the development of plans or policies." Id. Thus, discretionary function immunity does not apply when an official fails to comply with laws or policies designed to guide his actions in a particular situation. McNabb v. City of Memphis, 2004 WL 2375631 *3 (W.D. Tenn. 2004).

In the instant case, the Court held in its June 21, 2005 Order that discretionary function immunity applies in this case. Plaintiffs contend that discretionary function immunity does not apply because City Charter Section 250.1 and City Ordinance Section 9-3 specify the type of examinations to be utilized in the promotional process for the City of Memphis. The ordinance to which Plaintiff refers states in pertinent part:

Sec. 9-3. Examinations for applicants for employment.

(a) All applicants for employment in positions protected by this article shall be subjected to competitive job-related examinations under such rules and regulations as may be adopted by the director of personnel.

(b) The examinations to be provided for shall be of a practical nature and relate to such matters as will fairly test the relative competency of the applicant to discharge the duties of the particular position.

The Charter has identical language. Plaintiffs assert that this preexisting law governed the decisions

11

concerning the testing process. Therefore, Plaintiffs argue that the decisions were operational in nature, so immunity should not attach.

Although the Charter and Ordinance designate certain criteria, the decisions concerning what type of test to use, how to weight the various testing components, and how the tests are to be administered are left to the discretion of the director of personnel. Furthermore, the requirement that tests be "of a practical nature" must be interpreted by those in a position to make such decisions for Defendant. Thus, even though to some extent the testing procedures result from a determination based on preexisting laws, discretionary function immunity applies in this case.

Accordingly, Defendant's motion for partial summary judgment as to Plaintiff's negligence claim is granted.

> D.     City Charter and City Ordinances

Defendant argues that Plaintiffs have not demonstrated a sufficient injury on which to base claims of violations of the City's Civil Service Laws. Plaintiffs maintain that they are the intended beneficiaries of the laws and were injured when they were not selected for promotions and pay increases. The question of the significance of Plaintiffs' injuries is one for the factfinder. Accordingly, Defendant's motion for summary judgment as to Plaintiffs' claims pursuant to the City Charter and City Ordinances is denied.

## IV. CONCLUSION

For the aforementioned reasons, the Court **DENIES** Defendant's motion as to the white Plaintiffs' claims of discrimination, **GRANTS** Defendant's motion as to the white Plaintiffs' Equal Protection claim under a "class of one" theory only, and Plaintiffs' negligence claim. The Court **DENIES** Defendant's motion for partial summary judgment with respect to Plaintiffs' claims under the City Charter and City Ordinances.

**IT IS SO ORDERED** this 6th day of July, 2005.

BERNICE BOUIE DONALD
UNITED STATES DISTRICT JUDGE

UNITED STATES DISTRICT COURT - WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 360 in case 2:00-CV-02608 was distributed by fax, mail, or direct printing on July 6, 2005 to the parties listed.

---

Delaine R. Smith
FORD & HARRISON, LLP- Ridge Lake Blvd.
795 Ridge Lake Blvd.
Ste. 300
Memphis, TN 38120

David M. Sullivan
LAW OFFICES OF DAVID M. SULLIVAN
3251 Poplar Ave.
Ste. 130
Memphis, TN 38111

Louis P. Britt
FORD & HARRISON, LLP- Ridge Lake Blvd.
795 Ridge Lake Blvd.
Ste. 300
Memphis, TN 38120

Keith R. Thomas
FORD & HARRISON, LLP- Ridge Lake Blvd.
795 Ridge Lake Blvd.
Ste. 300
Memphis, TN 38120

Ricky E. Wilkins
LAW OFFICE OF RICKY E. WILKINS
119 S. Main St.
Ste. 700
Memphis, TN 38103

Earle J. Schwarz
GLANKLER BROWN, PLLC
One Commerce Square
Suite 1700
Memphis, TN 38103

Sara L. Hall
CITY ATTORNEYS OFFICE
125 N. Main Street
Rm. 314
Memphis, TN 38103

Honorable Bernice Donald
US DISTRICT COURT