# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TENNESSEE
# WESTERN DIVISION

_____

|  |  |  |
|---|---|---|
| MARILYN JOHNSON, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | No. 00-2608 A/P |
| | ) | & |
| CITY OF MEMPHIS, | ) | No. 04-2017 A/P |
| | ) | |
| Defendant. | ) | |
| | ) | |
| | ) | |
| FLORENCE BILLINGSLEY, et al., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | No. 04-2013 A/P |
| vs. | ) | |
| | ) | |
| CITY OF MEMPHIS, | ) | |
| | ) | |
| Defendant. | ) | |

_____

## REPORT AND RECOMMENDATION
_____

Before the court by order of reference are plaintiffs' Motion for Attorney Fees and Expenses ("Interim Motion for Fees" or "Interim Motion") (ECF No. 411), filed on February 28, 2007, and plaintiffs' Supplement to Plaintiffs' Motion for Attorney Fees and Expenses ("Supplemental Motion for Fees" or "Supplemental Motion") (ECF No. 600), filed on February 27, 2012. In regard to the Interim Motion for Fees, defendant City of Memphis ("City") filed a response in opposition on March 26, 2007. With leave of court,

plaintiffs filed a reply on February 29, 2012.[1]  In regard to the
Supplemental Motion for Fees, the City filed a response in
opposition on March 26, 2012.  Plaintiffs filed a reply on April 5,
2012, and the City filed a sur-reply on April 12, 2012.  After a
thorough review of the briefs filed by the parties and the entire
record, the court hereby submits the following proposed findings of
fact, proposed conclusions of law, and recommendation.

## I.  PROPOSED FINDINGS OF FACT

Plaintiffs are officers with the Memphis Police Department
("MPD").  They brought this lawsuit against their employer, the
City, for denying them promotion to the rank of sergeant during
police promotion processes administered by the City.  Their suit
consists of three consolidated cases challenging the promotion
processes conducted in 2000, 2001, and 2002 under federal, state,
and local law.  The three cases are Johnson v. City of Memphis, No.
00-2608 ("Johnson I"); Johnson v. City of Memphis, No. 04-2017
("Johnson II"); and Billingsley v. City of Memphis, No. 04-2013
("Billingsley").  In order to place plaintiffs' fees and expenses
motions into context, the court sets forth the lengthy procedural

---

[1]The Interim Motion was held in abeyance pending a determination of
the plaintiffs' appeal of the undersigned Magistrate Judge's order
denying discovery of the City's attorney billing records.
Plaintiffs argued, among other things, that they needed the City's
attorney billing records in order to fully develop their request
for attorney's fees.  After the case was reassigned to a new
District Judge in January 2012, the plaintiffs' appeal of the
discovery order was denied.  In that order, the plaintiffs were
granted leave to file a reply, which was filed on February 29.

history below.

On March 20, 2000, the MPD issued an Information Bulletin scheduling a sergeant promotion test that would consist of two components, a written examination and a "practical application exercise." The only qualification for participation was five years of continuous service as a patrol officer. To develop this test, the City contracted with Dr. Mark Jones, an industrial and organizational psychologist who had worked with the City on earlier promotion tests, to ensure that the tests were nondiscriminatory and complied with the City's civil service laws. The weighting of the various parts of the promotion process was to be modeled after that of an earlier 1996 process, with four components receiving the following weights: job knowledge test, 20%; video-based practical test, 50%; performance evaluations, 20%; and seniority, 10%. Unlike the 1996 process, the 2000 process utilized a cutoff score on the written test as an initial hurdle in the promotion process, i.e., candidates had to score above the cutoff in order to proceed to the practical test. Their written test score was then combined with the other three test elements, after weighting and standardizing, to arrive at a total score. This structure was set forth in a Study Guide that was provided to all candidates.

In May 2000, the written examination was administered to 444 candidates, consisting of 228 African-Americans, 212 Caucasians, and 4 "other" candidates. As required under an earlier agreement

with the MPD officers' union, a cutoff score of 70 was initially applied to the written test. Utilizing this cutoff score, however, resulted in an adverse impact ratio of 0.77, which was less than the 0.80 minimum acceptable ratio under the four-fifths rule set forth by the Equal Employment Opportunity Commission ("EEOC"). Dr. Jones recommended that the City lower the cutoff score to 66, which he arrived at by subtracting one standard measure of error from a score of 70. Using the 66 cutoff score, 389 of the 444 candidates (consisting of 190 African-Americans, 195 Caucasians, and 4 "other") were allowed to proceed to the video test, thus satisfying the EEOC's four-fifths rule at that initial stage. On or about June 1, 2000, the City discovered that portions of the practical exercise component of the test had been leaked to certain applicants prior to their taking the test, thereby compromising the results. The City responded to the compromise of the promotion process by excluding the practical component from consideration in scoring and increasing the weight given to the written test and the performance evaluations from 20% to 45%.

On July 11, 2000, two patrol officers who unsuccessfully competed for promotion to sergeant in the MPD's 2000 promotion process filed an employment discrimination action (Johnson I), alleging that the elimination of the practical exercise test from consideration in promotion decisions had a disparate impact on racial minorities and amounted to intentional unlawful

discrimination by the City. The complaint alleged violations under 42 U.S.C. § 1983, the Fourteenth Amendment, Article I, Section 8 of the Tennessee Constitution, and the Tennessee Human Rights Act, Tennessee Code Annotated § 4-21-101, et seq. ("THRA"). Plaintiffs sought to enjoin the City from filling the vacant sergeant positions and to restrain the City from making promotions to sergeant until the court conducted a hearing on the application for a preliminary injunction. The court denied the original plaintiffs' request for a temporary restraining order and preliminary injunction. The court held that the plaintiffs had demonstrated neither a likelihood of success on the merits nor irreparable injury, and that the harm to the City and the public from a shortage of sergeants would be substantial.

Dr. Jones provided the City with a rank-ordered promotion list based on the results of the 2000 process. On July 12, 2000, the City promoted the first 63 candidates on the promotion list in rank order, 28 of whom were African-American and 35 of whom were Caucasian. On September 12, 2000, the Johnson I complaint was amended, adding fifty additional plaintiffs. Of the fifty-two plaintiffs, twenty-three identified themselves as African-American, two as Hispanic, and twenty-seven as Caucasian. As revised, the complaint alleged that the MPD had intentionally discriminated against the African-American and Hispanic plaintiffs by eliminating the practical exercise test from the 2000 promotion process and by

increasing the weight of the written test after the process had been completed. Plaintiffs further alleged that the MPD had intentionally discriminated against the Caucasian plaintiffs by releasing in advance study materials for the practical exercise test to a select group of African-American candidates. The complaint claimed violations of 42 U.S.C. § 1981, 42 U.S.C. § 1983, the Fourteenth Amendment, Tennessee Code Annotated § 4-21-401, and Memphis city laws requiring the use of competitive job-related tests.

Under this First Amended Complaint, plaintiffs sought declaratory judgment holding the 2000 promotion process to be invalid. Plaintiffs also requested that the MPD be enjoined from making any further promotions to the rank of sergeant based on the 2000 promotion process, that those sergeants who had already been promoted pursuant to the 2000 process be required to compete in a new promotion process to be developed and administered under the oversight of a court-appointed receiver, and that any sergeant shown to have received, used, or benefitted from unauthorized study materials be disqualified from competing in the new promotion process. In the alternative, plaintiffs requested that they be awarded back pay with interest, and retroactive promotion to sergeant. On October 25, 2001, plaintiffs amended their complaint to add a claim that the City had violated Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e-2 et seq. The

City ultimately conceded that the 2000 process was invalid. As a result, on June 25, 2001, the court entered partial summary judgment in favor of the Johnson I plaintiffs, declaring the 2000 process to be invalid on grounds that it violated § 250.1 of the City Charter and City Ordinance § 9-3. The court reserved ruling on the issue of what relief, if any, was proper. The City's expert had informed the court that the compromised 2000 test could not be salvaged and that a new test would have to be developed.

On July 2, 2001, the court granted the City leave to begin a new promotion process in September 2001. The City notified sergeants who had been promoted to sergeant in the 2000 process that their promotions were rescinded and that they would be required to compete in the upcoming promotion process. Pending the results of the new promotion process, the sergeants were given the option of returning to their pre-promotion positions or remaining in their current positions with a 5% out-of-rank reduction in pay. On September 7, 2001, the Tennessee Chancery Court enjoined the City from demoting and/or reducing the pay of officers who had been promoted to sergeant based on the invalid 2000 test until promotions were made from the 2002 sergeants' promotion process. Green v. City of Memphis, No. CH-01-156601 (Ch. Ct. Tenn. August 21, 2001). The chancery court acknowledged the federal district court's order holding the 2000 test invalid, but found that the order did not require the promotions to be rescinded. The City

complied with the chancery court's order and no sergeants were demoted.

The City then contracted with Jeanneret & Associates ("J&A") to design a new officer promotion process. The 2002 process that resulted was more sophisticated than the 2000 process in many ways. Test security was tightened to prevent the kind of compromise that occurred in 2000. All candidates were informed in advance of the format of the test and the weighting of the various components, and a study guide was provided to all candidates. A formal test plan was submitted to the district court for purposes of full disclosure to all interested parties. The test plan primarily consisted of a comprehensive, step-by-step description of the job analysis work that was conducted, a description of the literature review, and consideration of various testing alternatives conducted. At that time, Dr. Jeanneret advised the court that he was going to follow a content validity approach. There was discussion with the court about using a criterion-related validity approach, but Dr. Jeanneret did not think it was feasible under the circumstances to use this method due to the security issues involved.

The final process design addressed concerns raised by plaintiffs' expert, Dr. Sharf, particularly with regard to the possibility that individuals who had been promoted to sergeant in 2000 might have an unfair advantage over those candidates who had not performed the job of sergeant. These issues were resolved to

the satisfaction of Dr. Sharf. The process was multi-faceted, assessing a broad range of job skills. Components included an investigative logic test, a job knowledge test, an application of knowledge test, a grammar and clarity test, and an oral response test. The City administered the new process September 27-29, 2001, and scoring of the tests was completed in the fall of 2002. The process resulted in substantial adverse impact on minority applicants.

In December 2002, Dr. Jeanneret provided the City with a rank-ordered list and recommended that the list be used to make promotions. Dr. Jeanneret advised the City that, based upon his test development and the analysis that he had performed, the test was content valid and could be used for ranking purposes in the selection of individuals to the rank of sergeant. Out of 274 African-American candidates and 240 Caucasian candidates, 86 African-Americans were selected for promotion, compared to 176 Caucasians. On January 10, 2003, the City took the unusual step of promoting all 264 patrol officers selected at one time instead of its usual practice of promoting on the basis of need over a two-year period. On April 23, 2003, the chancery court dissolved the preliminary injunction in Green. This allowed the City to remove from the rank of sergeant those officers who had been promoted to sergeant as a result of the invalid 2000 test but who failed in the 2002 test to rank at the level required for promotion

to sergeant.

On September 19, 2003, the City issued an Information Bulletin announcing the 2003 process for promotion from sergeant to lieutenant. Among other eligibility requirements, candidates for the lieutenant positions were required to have served at least two continuous years in the sergeant's grade by October 20, 2003. Eligible candidates could take the qualifying exam scheduled for December 4-6, 2003.

On October 21, 2003, two of the Johnson I plaintiffs who had been promoted to sergeant as a result of the 2002 process requested a preliminary injunction against the MPD. After applying to take the lieutenant promotion exam, the plaintiffs had received letters informing them that they were ineligible to take the exam because they did not have two years of service as a sergeant. Plaintiffs requested that the court issue injunctive relief regarding all plaintiffs in this case mandating that the City either (1) allow all plaintiffs to take the lieutenant's promotion test on December 4-6, 2003; (2) set aside fifty-two vacant lieutenant positions until the conclusion of the case; or (3) refrain from conducting the lieutenants' promotion process until the conclusion of the case. The court granted plaintiffs' motion in part by ordering the City to hold open fifty-two vacant lieutenant positions until the conclusion of the case.

In the face of opposition from the City to their motion to

amend the complaint to include the 2002 process, on January 9, 2004, the fifteen African-American plaintiffs in Johnson I who were not promoted to sergeant challenged the 2002 process in a separate suit (Johnson II) on grounds similar to those asserted in Johnson I. Contemporaneous to this Johnson II filing, a separate group of 35 African-American plaintiffs filed suit (the Billingsley case) asserting the same claims alleged in Johnson II. On February 27, 2004, the Johnson I complaint was amended for the third time to include an allegation by the African-American plaintiffs of intentional discrimination for failing to promote them to sergeant in the 2002 process in violation of 42 U.S.C. § 1981 and Title VII. Plaintiffs also added a claim that the City was negligent in the development and implementation of the 2002 promotion process. On October 28, 2004, the court entered partial summary judgment on the Title VII disparate impact claims of the Johnson II and Billingsley plaintiffs regarding the 2002 process, finding that the plaintiffs had established a prima facie case of disparate impact, thus shifting to the City the burden of showing that the process was job related.

On November 17, 2004, recognizing that the three cases shared common questions of law and fact, the court granted the City's motion to consolidate the Johnson I, Johnson II and Billingsley cases in the interest of efficiency and judicial economy. On February 4, 2005, the court entered summary judgment in favor of

the Johnson I plaintiffs on their Title VII disparate impact claim as to the 2000 promotion process on grounds that the City had not offered any proof that the written test was job-related or a business necessity. On July 6, 2005, the court entered partial summary judgment in favor of the City with respect to all plaintiffs' Equal Protection claims based on a "class of one" theory, as well as all plaintiffs' claims of negligence with respect to both the 2000 and 2002 processes. Following a bench trial of the consolidated cases that took place from July 11-27, 2005, on August 18, 2005, the court entered judgment as a matter of law, dismissing the non-minority Johnson I plaintiffs' claims of intentional race discrimination.

On December 28, 2006, the court issued a Memorandum Opinion and Order on Remedies ("Order on Remedies") (ECF No. 388), finding that the City violated Title VII with regard to its promotion processes and awarding the minority plaintiffs promotion to the rank of sergeant, back pay and retroactive seniority at the rank of sergeant, and "reasonable attorney fees, costs and expenses." (Order on Remedies at 38). Plaintiffs were also instructed in the Order on Remedies to submit an interim statement of fees and expenses within sixty days. (Id.) Plaintiffs complied with this order by submitting the Interim Motion for Fees. In support of the motion, plaintiffs attached billing records from their attorney, David Sullivan; a declaration from Mr. Sullivan attesting to the

accuracy and reasonableness of his fees; and three affidavits from other civil rights attorneys in Memphis, also vouching for the reasonableness of Mr. Sullivan's fees. At the time, plaintiffs sought $529,202.50 in attorney's fees (2,116.81 hours at a rate of $250.00 per hour) and $161,466.26 in expenses. The plaintiffs also requested that a 2.0 multiplier be applied to the fees, due to various exceptional circumstances faced by Mr. Sullivan during this litigation, such as the case's complexity, undesirability, length, and the demands it placed upon him as a solo practitioner.

In its opposition to the Interim Motion, the City sought to reduce the amount of fees and expenses, and opposed the use of any multiplier.[2] In summary, the City argued (1) plaintiffs sought fees for hours expended on unsuccessful claims that should be excluded from the lodestar calculation; (2) Mr. Sullivan included time entries for clerical work that should have been either excluded or compensated at a lower rate; (3) Mr. Sullivan's time entries were vague; (4) plaintiffs' limited success in the case did not warrant an enhancement to the lodestar amount; and (5) plaintiffs' expert witness expenses were not reasonable and should be excluded. In support of its arguments, the City attached a spreadsheet detailing which time entries of Mr. Sullivan that it found objectionable, and an affidavit from the City's lead

---

[2]The City did not dispute that Mr. Sullivan's hourly rate of $250.00 was reasonable.

attorney, Louis Britt, stating his own hourly rate.

Since the date of plaintiffs' filing of the Interim Motion, the parties have litigated several more issues that have arisen, which the court will briefly summarize. On August 22, 2007, the plaintiffs sought an injunction allowing them to sit for a "make-up" promotion examination for the rank of lieutenant that was scheduled for October 2007. The City opposed this motion, and argued that allowing the plaintiffs to take the exam would violate the MPD's two-year service requirement at the rank of sergeant for eligibility. On September 4, 2007, the court issued an injunction requiring the City to allow the plaintiffs to sit for the exam, reasoning that the harm to the City in allowing the plaintiffs to sit for the examination, which was already scheduled, would be minimal.

Subsequently, on July 14, 2008, the plaintiffs filed a motion to reopen discovery in order to procure records from the City regarding the results of the make-up lieutenant examination. The City opposed this motion as well, arguing that the full results of the examination were beyond the scope of plaintiffs' claims and irrelevant. The undersigned Magistrate Judge granted plaintiffs' motion. After an appeal by the City, the District Judge affirmed the order.

Next, on September 14, 2009, the plaintiffs again sought an injunction from the court, this time to force the City to promote

those plaintiffs who had scored high enough on the lieutenant examination to be eligible for promotion. The City again opposed the plaintiffs' efforts. Upon referral of the motion, the undersigned Magistrate Judge recommended that the motion be granted, and that those plaintiffs with sufficient scores be promoted to lieutenant. The District Judge adopted the report and recommendation over the City's objections, and issued an injunction requiring these promotions. The City subsequently appealed the District Judge's injunction to the Sixth Circuit. The Court of Appeals affirmed the order on October 28, 2011. On July 25, 2011, the plaintiffs filed a motion seeking to convert the preliminary injunction to a permanent injunction. Upon referral, the undersigned Magistrate Judge recommended that the motion be granted, and on November 7, 2011, the District Judge adopted the report and recommendation over the City's objections, and made the injunction permanent.

On February 27, 2012, the plaintiffs filed their Supplemental Motion for Fees. The Supplemental Motion sets forth the additional attorney's fees and expenses incurred by plaintiffs since the filing of the Interim Motion. Plaintiffs attach similar documentation to that provided with their Interim Motion, namely Mr. Sullivan's updated billing records and affidavits in support of the reasonableness of his fees from other Memphis-area attorneys. In the Supplemental Motion, plaintiffs state that Mr. Sullivan has

expended an additional 652.80 hours on this case since the filing
of the Interim Motion and incurred an additional $3,950.20 in
expenses. Plaintiffs also set forth an increased hourly rate for
Mr. Sullivan of $375.00 (as opposed to the Interim Motion's $250.00
rate), and request that they be awarded attorney's fees at this
rate for all hours expended by Mr. Sullivan since the case's
inception, in order to compensate Mr. Sullivan for the delay in the
payment of his fees. Plaintiffs additionally request that a 1.2
multiplier be applied to the fees. The City opposes the amount of
fees sought in the Supplemental Motion. In doing so, the City
incorporates its earlier arguments in opposition to the Interim
Motion. In addition, the City argues that certain hours expended
by Mr. Sullivan were excessive, specifically those spent in his
unsuccessful attempt to obtain the City's attorney billing records
in discovery, and that Mr. Sullivan's increased hourly rate of
$375.00 is not reasonable.

## II.  PROPOSED CONCLUSIONS OF LAW

Both the Interim Motion and the Supplemental Motion remain
pending before the court. The court will address the arguments
raised by the City in both motions, and will treat plaintiffs'
Supplemental Motion as a motion for all reasonable fees and
expenses they have incurred over the life of this case.

It is not disputed that plaintiffs are entitled to attorney's
fees and expenses; the only task for the court is to determine the

proper amount to be awarded.  The method for determining the amount of fees to be awarded to the prevailing party is the "lodestar" method, in which the fee award equals the hourly rate for comparable legal services in the relevant community, multiplied by the number of hours reasonably devoted to the matter by the prevailing attorney.  As stated by the Supreme Court, the lodestar method is favored because it "roughly approximates the fee that the prevailing attorney would have received if he or she had been representing a paying client who was billed by the hour in a comparable case" and produces reasonably objective and predictable results.  Perdue v. Kenny A. ex rel. Winn, 130 S. Ct. 1662, 1672 (2010).  The lodestar method is intended to provide a fee award that is "reasonable" and "is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."  Id.  It is not, however, intended to provide a financial windfall for prevailing attorneys.  Id. at 1672-73; see also Blum v. Stenson, 465 U.S. 886, 893-94 (1984).

## A.  The Reasonableness of Mr. Sullivan's Hourly Rate

"To arrive at a reasonable hourly rate, courts use as a guideline the prevailing market rate, defined as the rate that lawyers of comparable skill and experience can reasonably expect to command within the venue of the court of record."  Monroe v. Jackson-Madison Cnty. Sch. Sys. Bd. of Educ., No. C.A. 72-1327, 2010 WL 3732014, at *2 (W.D. Tenn. Sept. 23, 2010) (quoting Geier

<u>v. Sundquist</u>, 372 F.3d 784, 791 (6th Cir. 2004)). "The appropriate rate, therefore, is not necessarily the exact value sought by a particular firm, but is rather the market rate in the venue sufficient to encourage competent representation." <u>Id.</u> (quoting <u>Gonter v. Hunt Valve Co.</u>, 510 F.3d 610, 618 (6th Cir. 2007)). In determining the reasonableness of the hourly rate and number of hours used in the lodestar calculation, the court may also weigh the factors first set out by the Fifth Circuit in <u>Johnson v. Georgia Highway Express, Inc.</u>, 488 F.2d 714 (5th Cir. 1974):

> (1) time and labor required; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time and limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in "similar cases."

<u>Reed v. Rhodes</u>, 179 F.3d 453, 471-72 (6th Cir. 1999) (citing <u>Georgia Highway Express</u>, 488 F.2d at 717-19).

Mr. Sullivan originally requested an hourly rate of $250.00 in the Interim Motion for legal services performed through February 21, 2007.[3] However, in the Supplemental Motion, Mr. Sullivan

---

[3]In the Interim Motion, Mr. Sullivan stated in his declaration that his hourly rate increased to $300.00 as of January 1, 2007. However, Mr. Sullivan did not seek any attorney's fees in the Interim Motion based on the $300.00 hourly rate. The City argued that the $300 hourly rate was excessive, but it is unclear to the court why the City raised this challenge, because Mr. Sullivan did

requests an hourly rate of $375.00 for legal services performed, not only subsequent to February 21, 2007, but for all hours he has devoted to this case.[4] He argues that his $375.00 rate should be applied for all legal services performed in order to compensate him for the delay in payment of his fees. The City's lead attorney, Mr. Britt, states in his 2012 affidavit that his billing rate for the City in this matter has ranged from $150.00 initially, to a high of $230.00 in 2009. However, Mr. Britt also previously stated in his 2007 affidavit that his billing rate for non-City matters over the course of this litigation (as of 2007) had risen incrementally from $255.00 to $335.00 per hour. The court finds that the hourly rate charged by Mr. Britt to the City is not representative indicative of the market rate for attorneys representing civil rights plaintiffs in the Memphis area. The court has reviewed several cases from this district in which fees have been awarded to prevailing parties in civil rights cases. See Isabel v. City of Memphis, 404 F.3d 404, 415-16 (6th Cir. 2005) (affirming district court's award of $250.00 per hour); Monroe, 2010 WL 3732014, at *3 (finding reasonable an hourly rate of $275.00); Ford v. Tenn. Senate, No. 2:06-cv-2031, 2008 WL 4724371, at *5 (W.D. Tenn. Oct. 24, 2008) (finding reasonable plaintiffs'

_____

not seek any fees using the $300.00 rate.

[4]He has presented affidavits from three other Memphis-area attorneys who represent civil rights plaintiffs to support the $375.00 requested rate.

-19-

attorney's rate of $380.00 per hour, although it was "above the fee range usually approved in this market," because of the "complexity of the case"); <u>Love v. Shelby Cnty. Sheriff's Dept.</u>, No. 2:02-cv-2478, 2007 WL 4615950, at *6 (W.D. Tenn. Dec. 28, 2007) (finding reasonable an hourly rate of $300.00); <u>Doe v. Bd. of Educ. of Memphis City Schs.</u>, No. 05-2411 (W.D. Tenn. Jan. 9, 2007) (unpublished) (finding reasonable an hourly rate of $425.00 in § 1983 sexual abuse case).

First, the court finds that for legal services performed by Mr. Sullivan in this case up to February 2007, the rate of $250.00 per hour is reasonable. The court agrees with Mr. Sullivan that he should also be compensated for the time value of money lost due to the delay in payment of fees. The case at bar has been litigated for over twelve years, and over five years have passed since the Order on Remedies awarded attorney's fees to the plaintiffs. However, the court finds that the method proposed by Mr. Sullivan – calculating the fees at the current hourly rate for all services provided by Mr. Sullivan over the entire course of this litigation – is not a fair and equitable way to compensate him for this delay. Although the Supreme Court has recognized that awarding attorney's fees at current hourly rates *may* be an appropriate way to compensate for the delay in payment of fees resulting from protracted litigation, the court is certainly not required to use that approach. For example, the court may award reasonable

interest on the historical fee rate.  See <u>Missouri v. Jenkins ex</u> <u>rel. Agyei</u>, 491 U.S. 274, 283-84 (1989) ("an appropriate adjustment for delay in payment - whether by the application of current rather than historic hourly rates *or otherwise* - is within the contemplation of [Section 1988]") (emphasis added); <u>see also</u> <u>Termine ex rel. Termine v. William S. Hart Union High School Dist.</u>, 288 F. App'x 360, 363 (9th Cir. 2008) (affirming district court's use of interest to compensate plaintiffs for delay in payment of attorney's fees); <u>Ohio River Valley Envtl. Coal., Inc. v. Green</u> <u>Valley Coal Co.</u>, 511 F.3d 407, 419 (4th Cir. 2007) ("The delay factor may be accounted for either by using a fee rate based on the current market or by using the historical fee rate with reasonable interest added.").  In this case, the plaintiffs previously asked the court to apply an interest rate of 2.35% per annum to the plaintiffs' back pay award, which the court adopted.  The court finds that using this same interest rate for Mr. Sullivan's legal services performed up to and including February 2007 reasonably and fairly compensates him for the delays.  The court therefore recommends that plaintiffs be awarded simple interest at a rate of 2.35% per annum as of December 28, 2006 on the attorney's fees requested in the Interim Motion.

With respect to Mr. Sullivan's legal fees incurred after February 2007 - for which he seeks an hourly rate of $375.00 - the court finds that Mr. Sullivan's requested hourly rate is not

reasonable based on the hourly rates previously approved in this district in civil rights actions. The court will instead use an hourly rate of $325.00, which is in line with what the City's own lead counsel has charged to other clients, falls within the market rate for comparable legal services, and adequately factors in the unique, complex, and demanding nature of this case. This hourly rate, while moderately higher than rates previously approved in other civil rights cases in this district, fairly compensates Mr. Sullivan for the time value of money loss due to the delays. Therefore, the court recommends that no interest be assessed on Mr. Sullivan's legal services performed after February 2007.

## B. The Reasonableness of the Number of Hours Expended by Mr. Sullivan

### 1. <u>Unsuccessful Claims</u>

The City argues that plaintiffs' fee award should be reduced because several claims brought by the plaintiffs were unsuccessful, and that plaintiffs should not be awarded fees for hours devoted to unsuccessful claims. The court finds this argument unpersuasive. "[S]uccessful and unsuccessful claims are deemed related when they 'involve a common core of facts,' are 'based on related legal theories,' or when counsel's time is 'devoted generally to the litigation as a whole, making it difficult to divide the hours expended.' <u>Barnes v. City of Cincinnati</u>, 401 F.3d 729, 746 (6th Cir. 2005) (quoting <u>Hensley v. Eckerhart</u>, 461 U.S. 424, 433 (1983)). Notably, the City raised the same argument in <u>Isabel</u>, and

it was rejected by both the district court and the Sixth Circuit. As the appellate court stated, "[a] proffer of alternative arguments does not justify reducing an award, especially where the arguments were made on a common set of facts and success on just one of the arguments would achieve the hoped-for results." Isabel, 404 F.3d at 416. Similarly, in the case at bar, plaintiffs advanced multiple legal claims in an attempt to invalidate the City's promotion procedures and procure corresponding relief. While the majority of these claims were ultimately unsuccessful, either due to directed verdicts entered against plaintiffs prior to judgment, or by the Order On Remedies, plaintiffs' success in their Title VII claims procured them the same result and remedies that they sought via their unsuccessful claims. Moreover, the factual and legal underpinnings of all of these claims were the same, as they all involved an analysis of the City's flawed promotion processes, the testing modalities utilized during these processes, how those processes were engineered, and the statistical and expert support for the City's chosen procedures. Consequently, the court finds that plaintiffs' successful and unsuccessful claims were substantially related, and that a reduction in fees due to plaintiffs' lack of success on certain legal claims is inappropriate.

The same logic holds true when analyzing the claims brought on behalf of the Johnson I non-minority plaintiffs. The City argues

that the fee award should be reduced because the non-minority plaintiffs were not successful on their claims that remained when the District Judge issued the Order on Remedies. First, the court notes that the District Judge did not limit her award of attorney's fees and expenses to the minority plaintiffs. (Order on Remedies at 38) ("*Plaintiffs* are entitled to reasonable attorney fees, costs, and expenses.") (emphasis added). Second, the non-minority plaintiffs did prevail in invalidating the City's 2000 sergeant promotion process. Third, the court finds that the claims advanced by the non-minority plaintiffs also related significantly to the same factual circumstances that formed the basis for the minority plaintiffs' claims, since both groups of plaintiffs sought to challenge the validity of the City's promotion processes. Finally, Mr. Sullivan stated in his February 28, 2007 declaration that he removed 99 billable hours devoted solely to the non-overlapping claims brought on behalf the non-minority plaintiffs. For these reasons, the court finds that no reduction in fees is necessary based upon the more limited success of the non-minority plaintiffs in this litigation.

    2.  <u>Clerical Work</u>

    The next argument raised by the City to support its request for a fee reduction is that certain of Mr. Sullivan's time entries relate to clerical work that could have been performed at a lower rate. Again, the court notes that this argument was specifically

rejected by the district court and the Sixth Circuit when raised by the City in <u>Isabel</u>. <u>Isabel</u>, 404 F.3d at 416 ("The City argues that the rate should be adjusted downward based on numerous listed tasks which could have been performed at a lower hourly rate. Plaintiffs' lawyer, however, is a solo practitioner who does not operate with the assistance of paralegals or support staff. . . . [T]he City can make no argument that is based on comparison."). Moreover, even if a reduction for clerical work were appropriate, the court finds, after a review of the time entries found objectionable by the City on this basis, that many of these entries are not clerical. For example, below are a few of the entries objected to by the City, in part, because they involve allegedly clerical work:

> 07/29/04 - Review letter from Atty. Loy who advised Dr. Jeanneret and J&A would not be complying with subpoenas. Research applicable rule and cases. [P]repare letter in response and FAX to Atty. Loy.

> 08/06/04 - Review defts's 38 pg. motion and memo to quash subpoena to J&A. Prepare letter to Attys. Loy and Wilkins demanding they withdraw the motion.

> 08/13/04 - Prepare exhibits for Dr. Jeanneret's deposition. Notify court reporter and prepare letter to Atty. Wilkins advising that dep. would convene at 3:00 p.m. by telephone conference call.

(Ex. 1, Def.'s Resp. to Interim Mot., ECF No. 417-1, p. 74). The court assumes that the City finds these entries clerical in nature because they include references to preparing letters and making phone calls. However, the court does not find it unreasonable that

an attorney would perform these tasks, particularly when they involve correspondence with opposing counsel.   Moreover, Mr. Sullivan states in his February 29, 2007 declaration:

> when entries indicate a document was prepared, no clerical time in preparation of the document is claimed. With respect to entries when a fax was sent, no clerical time or expense is claimed.  The notation that a fax was sent was only intended to show the method of transmittal. Likewise, when an entry indicates a document was filed, no time is claimed for the process of filing the document with the clerk, it was only intended to show that the document had been filed as of that date.

(Ex. 2, Pl.'s Reply to Def.'s Resp. to Interim Mot., ECF No. 602-2, ¶ 7.)  For these reasons, the court finds that a reduction in fees based on inclusion of clerical work is inappropriate.

3.   Discovery of the City's Billing Records and Motions for Sanctions

Next, the City argues that plaintiffs should not be awarded fees for attorney hours devoted to plaintiffs' unsuccessful discovery request for the City's attorney billing records.   When determining whether a party should be compensated for attorney hours devoted to an unsuccessful motion, "the standard is whether a reasonable attorney would have believed the work to be reasonably expended in pursuit of success at the point in time when the work was performed." Wooldridge v. Marlene Indus. Corp., 898 F.2d 1169, 1177 (6th Cir. 1990) (abrogated on other grounds by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Resources, 532 U.S. 598 (2001)).  The court finds that, although plaintiffs were unsuccessful, their attempt to procure the City's attorney billing

-26-

records was reasonable.  See, e.g., Pollard v. E.I. DuPont de
Nemours & Co., No. 95-3010, 2004 WL 784489 (W.D. Tenn. Feb. 24,
2004).

The court similarly finds that Mr. Sullivan's time spent
pursuing motions for sanctions against the City was reasonable.  As
Mr. Sullivan correctly states in his February 29, 2012 declaration:

> The district court granted sanctions against the City on
> November 16, 2004 in the Billingsley case because of
> defendant's abusive discovery tactics.  The court found
> defendant was, requiring plaintiffs' counsel to engage in
> "needle in a hay stack" searching, that city had
> submitted insufficient responses to interrogatories and
> other discovery, the City produced 30(b)(6)
> representative who lacked relevant knowledge about some
> of the subject matter identified in the notice.  The
> court ruled further sanctions would be held until end of
> the litigation "to find out if this matter goes any
> better . . . ."
>     In Johnson, plaintiffs sometimes combined their
> motions to compel and for sanctions into a single motion.
> While sanctions were denied, the motion to compel was
> granted.  In one instance, although the court held it was
> denying the motion for sanctions, it granted all the
> other relief sought by plaintiffs.

(Pl.'s Reply to Def.'s Resp. to Interim Mot., ECF No. 602, p. 11)

(internal citations omitted).

Therefore, the court rejects the City's argument that hours devoted
to these motions should be excluded.

    4.  Vagueness

The City contends that many of Mr. Sullivan's time entries are
vague.  As recently stated by the Sixth Circuit:

> The key requirement for an award of attorney fees is that
> the documentation offered in support of the hours charged
> must be of sufficient detail and probative value to

> enable the court to determine with a high degree of
> certainty that such hours were actually and reasonably
> expended in the prosecution of the litigation. However,
> entries may be sufficient even if the description for
> each entry is not explicitly detailed.

United States ex rel. Lefan v. Gen. Elec. Co., 397 F. App'x 144, 148-49 (6th Cir. 2010) (internal quotation marks and citations omitted). The Sixth Circuit added that "[t]he Supreme Court has held that 'counsel . . . is not required to record in great detail how each minute of [ ] time was expended . . . [but] should identify the general subject matter of [ ] time expenditures.'" Id. at 149 (quoting Hensley v. Eckerhart, 461 U.S. 424, 437 n.12 (1983)). After review of the entries, the court finds that nearly all of them sufficiently detail the tasks performed by Mr. Sullivan. The court finds, however, that Mr. Sullivan's Billingsley entry from 09/17/2004 for 2.25 hours, which states only "Conference with clients," is vague and will therefore be reduced by one hour. No further adjustment is warranted based on vagueness.

5.  Excessiveness

Next, the City argues that many of Mr. Sullivan's time entries are excessive.[5] Upon review of the entries labeled as excessive by

---

[5]The City has only objected to the excessiveness of specific time entries in plaintiffs' Interim Motion for Fees. In its response to the Supplemental Motion, while the City does refer broadly to the excessiveness of Mr. Sullivan's entries, it does not specifically point to any particular entry (other than those hours already discussed related to plaintiffs' attempt to discover the City's attorney billing records).

the City, the court finds most of these entries appear reasonable and are not excessive. For example, given the large number of plaintiffs in this case and the nature of these claims, it was reasonable for Mr. Sullivan to speak with his clients to gather sufficient facts. According to Mr. Sullivan's declaration:

> it was often times necessary to schedule group meetings over two to three day periods, including the weekends. In addition, since these cases began in 2000, plaintiffs' counsel has had over five hundred hours of client conferences, explaining the complicated testing procedures and standards followed by industrial and organizational psychologists and the complex legal quagmire that these cases have become entangled.

(Pl.'s Reply to Def.'s Resp. to Interim Mot., ECF No. 602, p. 12.) Moreover, twenty-eight of the plaintiffs were deposed in this case, which reasonably required Mr. Sullivan to devote a significant amount of time preparing these plaintiffs for depositions.

However, certain entries relating to the simple tasks of reviewing setting orders or leaving telephone messages have been billed at 0.25 hours. The court finds that these tasks only merit 0.10 hours of attorney time. This occurred in ten time entries on the dates of 07/10/2000, 10/19/2000, 06/22/2001, 07/31/2001, 08/07/2001, 10/22/2001, 01/16/2002, 01/23/2002 (two entries), and 04/23/2003. The court will reduce these entries by 0.15 hours each, thereby reducing Mr. Sullivan's billable hours submitted with the Interim Motion by 1.5 hours. The court finds the remaining entries labeled as excessive by the City to be reasonable.

**C.    Plaintiffs' Request for a Fee Enhancement**

Plaintiffs have asked for an enhancement to their attorney's fees by a multiplier of 1.2. There is a strong presumption that the lodestar calculation achieves the objective of "induc[ing] a capable attorney to undertake the representation of a meritorious civil rights case" *without* an enhancement. <u>Perdue</u>, 130 S.Ct. at 1673. Nevertheless, enhancements to fee awards may be applied by the district court in "rare" and "exceptional" circumstances not adequately captured by the lodestar calculation. <u>Id.</u> "[T]he burden of proving that an enhancement is necessary must be borne by the fee applicant," <u>id.</u>, and supported with "specific evidence." <u>Id.</u> (quoting <u>Blum</u>, 465 U.S. at 899, 901). Moreover, the Supreme Court made clear in <u>Perdue</u> that "an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation." <u>Id.</u> The court recognizes that certain characteristics of this case could potentially support a fee enhancement, such as the protracted nature of this litigation. <u>Id.</u> at 1674-75. However, the court submits that an enhancement is not warranted in this case. The court finds that the grounds cited by the plaintiffs in support of their request for a fee enhancement have been fairly accounted for in the application of the lodestar factors.

**D.    The Reasonableness of Plaintiffs' Expenses**

The City objects to a large portion of plaintiffs' expenses as unreasonable, specifically their expert witness fees. The City argues that none of the fees paid to Dr. Sharf (totaling

$11,138.65) should be reimbursed, because his role was only "to review and address potential issues with Dr. Jeanneret's development of the 2002 promotional test" during the "planning stages" of the litigation. (Def.'s Resp. to Interim Mot., ECF No. 417, p. 19.) The City does not cite to any legal authority to support this argument. The court finds that it was reasonable for plaintiffs to employ Dr. Sharf to review the City's procedures in designing its 2002 promotion test, even if he was not involved throughout the litigation. The court finds that it was reasonable for plaintiffs to have an expert advise them on the re-test and to appear at the several court proceedings following the partial summary judgment granted to the Johnson I plaintiffs invalidating the 2000 promotion process. Dr. Sharf's expert services were also reasonable for the plaintiffs' challenge to the sergeant promotion processes used in 2001-02.

In addition, the City argues that the expert fees paid to Dr. DeShon (totaling $104,605.66) are unreasonable, because the entries regarding his fees are vague and excessive and because he "focused a large percentage of his time and effort evaluating the reliability and validity of the 2002 promotion process, which the Court rejected." The courts finds that it was reasonable for the plaintiffs to have Dr. DeShon analyze the promotion processes at issue in this case and rebut the City's experts. As Mr. Sullivan states in his February 29, 2012 declaration, Dr. DeShon extensively

reviewed alternative employment practices with potentially less adverse impact on minority plaintiffs, the existence of which were relevant to the plaintiffs' Title VII claims. The court also finds that it was reasonable for plaintiffs to have Dr. DeShon testify at trial and be present at trial when he was not testifying. The court finds that the expert expenses paid to Dr. DeShon were reasonable.

The City also argues the expense entries regarding the expert fees paid to Dr. DeShon are vague. It is true that the entries on Mr. Sullivan's expense report regarding expert fees paid to Dr. DeShon do not provide any detail about how they were calculated or the content of Dr. DeShon's services. However, plaintiffs have attached detailed invoices from Dr. DeShon as Exhibit I to their reply to the City's opposition to the Interim Motion. (ECF No. 602-10.) These invoices provide adequate detail regarding the services provided by Dr. DeShon and how his fees were determined, and therefore no reduction based on vagueness is necessary.

The City additionally argues that the expert fees paid to Dr. Parrish are excessive.[6] Dr. Parrish provided an affidavit in support of plaintiffs' motion for partial summary judgment filed in December 2000, which resulted in the court declaring the 2000

---

[6]The City does not actually provide any basis for its challenge to the expert fees paid to Dr. Parrish. However, Dr. Parrish's fees are referenced in the City's response in opposition to the Interim Motion. The court therefore assumes that the City believes Dr. Parrish's fees are excessive.

promotion process to be invalid. The court finds that it was reasonable for the plaintiffs to have Dr. Parrish provide this affidavit and that the fees paid to him were reasonable.

Finally, for the same reasons discussed above regarding compensating Mr. Sullivan for the delays in awarding his attorney's fees, the court recommends that per annum simple interest of 2.35% be applied as of December 28, 2006 to the expenses sought by plaintiffs in the Interim Motion.[7]

### III. RECOMMENDATION

For the foregoing reasons, the court recommends that the plaintiffs' motions for attorney's fees and expenses be granted as follows:

- $528,577.50 plus interest in attorney's fees for hours expended prior to the Interim Motion. (2,116.81 total hours – 2.5 deducted hours x $250 per hour). Applying 2.35% per annum interest from December 28, 2006 to June 21, 2012, would yield an interest payment of $68,070.21.

- $212,160.00 in attorney's fees for hours expended after the Interim Motion. (652.80 total hours x $325 per hour).

- $156,466.26 plus interest for expenses incurred prior to the Interim Motion (after deducting $5,150 withdrawn by plaintiffs). Applying 2.35% per annum interest from December 28, 2006 to June 21, 2012, would yield an interest payment of $20,149.72.

---

[7]Plaintiffs concede in their reply to the City's response in opposition to the Interim Motion, that $5,150 of their requested expenses should be withdrawn. This amount includes a duplicative entry for a $4,500 fee paid to Dr. DeShon, and a check tendered to the City (that was later returned) to cover travel expenses for the deposition of its expert witness. Consequently, the court will reduce the expenses awarded for the Interim Motion by $5,150.

- $3,950.20 for expenses incurred after the Interim Motion.


Respectfully submitted,

s/ Tu M. Pham
TU M. PHAM
United States Magistrate Judge

June 21, 2012
Date

**NOTICE**

**ANY OBJECTIONS OR EXCEPTIONS TO THIS REPORT MUST BE FILED WITHIN FOURTEEN (14) DAYS AFTER BEING SERVED WITH A COPY OF THE REPORT. 28 U.S.C. § 636(b)(1)(C). FAILURE TO FILE THEM WITHIN FOURTEEN (14) DAYS MAY CONSTITUTE A WAIVER OF OBJECTIONS, EXCEPTIONS, AND ANY FURTHER APPEAL.**