MARILYN JOHNSON; DURAND )
MARTIN; FRED ACOSTA; RACHELLE)
BARHAM; MIKE BISHOP; MIKE )
BLAKELY; SPENCER BRIGGS; )
GLENDA BROWN; TRACY BURFORD;)
FELIX CALVI; ROBIN CAMPBELL; )
TIM COOPER; CRAIG COOK; JAMES )
CURRIN; SEAN G. DAUBERGER; )
ANTHONY DAVIS; BRIAN DEHAAN; )
CHAROLETTE EASTER; LARRY )
ECHOLS; CHARLES GENTRY; JAMES)
GRISBY; JOHN HARBER; ROBERT )
HONORE; MELANIE HOWE; )
DOROTHY HYMAN; PHILLIP )
JACKSON; CHORCIE JONES; )
URSALA JONES; STACEY )
LAMONDUE; KATHLEEN LANIER; )
JAMES LUCKETT; EDWARD )
LUELLEN; RUSSELL MANESS; JOHN )
MANNON; JOSEPH MARROW; MIKE )
MCCORD; MICHAEL MCCOLLUM; )
ALISA MITCHELL; ALVIN MOORE; )
LESLEY MURRELL; DAVID )
PAYMENT; PAUL PRITT; MUNDY )
QUINN; HERLANCER ROSS; )
ANTHONY RUSSELL; RICKY )
SWATLEY; CELIA TISBY; PAUL )
TREMMEL; VERNON VAN BUREN; )
STEVE WARE; KEDZIE WHITE; and )
CONSTANCE YOUNG, )
                                          )
            Plaintiffs,                   )
                                          )
v.                                        )        Nos. 00-2608-STA-tmp; 04-2017-STA-tmp
                                          )
CITY OF MEMPHIS,                          )
                                          )
            Defendant,                    )
                                          )

|                                                      |     |                       |
| ---------------------------------------------------- | --- | --------------------- |
| and                                                  | )   |                       |
|                                                      | )   |                       |
| FLORENCE BILLINGSLEY; AUNDRA                          | )   |                       |
| SEGREST; LATANYA ABLE; GARY                           | )   |                       |
| BADGETT; BERNICE BLACK; BRUCE                         | )   |                       |
| BIVENS; LOYCE BONDS; SHERMAN                          | )   |                       |
| BONDS; TASHA CARTER; CLIFTON                          | )   |                       |
| DATES; ERIC DATES; CARLOS                             | )   |                       |
| DAVIS; MYRON FAIR; ANTHONY                            | )   |                       |
| GARDNER; NOVELL GRAY; BYRON                           | )   |                       |
| HARDAWAY; ERIC HULSEY;                                | )   |                       |
| ARLANDA JACKSON; EVLIN                                | )   |                       |
| JACKSON; BOBBY JONES;                                 | )   |                       |
| DEBORAH JONES; MYRON                                  | )   |                       |
| LAWRENCE; MARK LUCAS;                                 | )   |                       |
| RUSSELL MCDANIEL; VERTIE                              | )   |                       |
| MCNEIL; JESSIE NELOMS; CARL                           | )   |                       |
| RAY; JOHN SMITH; DAFFNEY                              | )   |                       |
| THOMAS; RYAN THOMAS; JAMES                            | )   |                       |
| VALENTINE; KEITH WATSON;                              | )   |                       |
| JACKIE WILLIAMS; JOHN                                 | )   |                       |
| WILLIAMS; and FRANK WINSTON,                          | )   |                       |
|                                                      | )   |                       |
| Plaintiffs,                                           | )   |                       |
|                                                      | )   |                       |
| v.                                                   | )   | No. 04-2013-STA-egb   |
|                                                      | )   |                       |
| CITY OF MEMPHIS,                                      | )   |                       |
|                                                      | )   |                       |
| Defendant.                                           | )   |                       |

---

**ORDER ADOPTING IN PART REPORT AND RECOMMENDATION, GRANTING IN PART AND DENYING IN PART PLAINTIFFS' INTERIM MOTION FOR ATTORNEY'S FEES, AND GRANTING IN PART AND DENYING IN PART PLAINTIFFS' SUPPLEMENTAL MOTION FOR ATTORNEY'S FEES**

---

Before the Court are Plaintiffs' Motion for Attorney's Fees ("the Interim Motion") (D.E. # 411), filed on February 28, 2007 and Plaintiffs' Supplemental Motion for Attorney's Fees ("the Supplemental Motion") (D.E. # 600), filed on February 27, 2012. Defendant filed Responses

(D.E. # 417, 608) on March 26, 2007, and March 26, 2012, and Plaintiffs filed Replies (D.E. # 602, 611) on February 29, 2012, and April 5, 2012. Defendant also filed a Sur-reply to the Supplemental Motion (D.E. # 612) on April 12, 2012.

The Magistrate Judge issued a Report and Recommendation ("the R&R") granting in part and denying in part the Interim and Supplemental Motions (D.E. # 613) on June 21, 2012. Plaintiffs and Defendant filed Objections (D.E. # 618-619) on July 16, 2012, and they filed Responses to the Objections (D.E. # 620-621) on July 30, 2012. For the following reasons, the Court **ADOPTS IN PART** the R&R, **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Interim Motion, and **GRANTS IN PART AND DENIES IN PART** Plaintiffs' Supplemental Motion.

## BACKGROUND

The objections to the R&R constitute one of the final issues remaining in this case's twelve-year history. Plaintiffs initially sued Defendant for alleged violations of Title VII's prohibition against racial discrimination in the promotional processes within the Memphis Police Department. After a non-jury trial held before Judge Donald[1] on July 11-28, 2005, the court found for Defendant on all claims except Plaintiffs' Title VII disparate impact claims as to the 2002 sergeant promotion process. The court entered a Memorandum Opinion and Order on Remedies (D.E. # 388) on December 28, 2006, which granted attorney's fees to Plaintiffs' attorney David Sullivan ("Sullivan"), a solo practitioner. As such, Plaintiffs filed the Interim and Supplemental Motions currently before the Court.

_____

[1]       Due to Judge Donald's elevation to the Sixth Circuit, the Court was reassigned to this case on January 5, 2012.

In the R&R, the Magistrate Judge detailed this case's lengthy procedural history in his Proposed Findings of Fact. (R&R, D.E. # 613, at 2-16.) Neither party has objected to this recitation, and the Court has reviewed it thoroughly. Accordingly, the Court will **ADOPT** the Magistrate Judge's Proposed Findings of Fact and hereby incorporates them by reference. The Court will now discuss the Magistrate Judge's proposed conclusions of law and identify those to which the parties object.

First, the Magistrate Judge evaluated the reasonableness of Sullivan's hourly rate. After reviewing the parties' arguments and examining other civil rights cases from the Western District and Sixth Circuit, the Magistrate Judge recommended that the Court award fees at a rate of $250.00 per hour for Sullivan's services performed up to February 2007. (*Id.* at 19-20.) To compensate him for the delay in receiving his fees, Plaintiffs would receive simple interest at a rate of 2.35% per annum as of December 28, 2006 on the attorney's fees requested in the Interim Motion. (*Id.* at 21.) For the fees requested in the Supplemental Motion, the Magistrate Judge recommended a rate of $325.00 per hour, which compensates Sullivan for the delay in receiving his fee, falls within the market rate for comparable legal services, and factors in the case's unique, complex, and demanding nature. (*Id.* at 22.)

After establishing Plaintiffs' attorney's hourly rate, the Magistrate Judge turned to the reasonableness of the hours he expended. First, the Magistrate Judge addressed the parties' arguments regarding Plaintiffs' unsuccessful claims. He recommended not reducing Plaintiffs' attorney's fees for lack of success on certain legal claims: because Plaintiffs' success in their Title VII claims procured the same result and remedies sought by their unsuccessful claims, and the factual and legal underpinnings of all of Plaintiffs' claims—an analysis of Defendant's

4

flawed promotion processes, the testing modalities used during those processes, and the statistical and expert support for Defendant's chosen procedures—were the same, a reduction was not necessary.  (*Id.* at 22-23.)  The Magistrate Judge also did not reduce the fee award for the non-minority Plaintiffs' claims for four reasons: Judge Donald did not limit her award of attorney's fees to only the minority Plaintiffs, the non-minority Plaintiffs successfully invalidated Defendant's 2000 sergeant promotion process, their claims significantly related to the same factual circumstances as the minority Plaintiffs' claims because all Plaintiffs challenged the validity of Defendant's promotion process, and Sullivan did not seek payment for 99 hours of work devoted to non-overlapping claims brought by the non-minority Plaintiffs.  (*Id.* at 23-24.)

Second, the Magistrate Judge did not reduce Plaintiffs' fees for including clerical work in his requested hours.  He noted that Sullivan is a solo practitioner without the benefit of paralegals or support staff and that many of the entries Defendant objected to were not clerical in nature. (*Id.* at 25.)  Relying on Sullivan's declaration that he did not seek payment for clerical time for the preparation or sending of documents, the Magistrate Judge found that a reduction of fees based on including clerical work would be inappropriate.  (*Id.* at 26.)  Third, the Magistrate Judge did not reduce Plaintiffs' claimed hours of work for including hours devoted to Plaintiffs' unsuccessful discovery request for Defendant's attorney billing records.  (*Id.*)  Based on some of Judge Donald's prior rulings in the case, the Magistrate Judge found that Sullivan could have reasonably expended the work with the belief that the discovery request would be successful. Accordingly, the Magistrate Judge did not exclude the hours devoted to Plaintiffs' unsuccessful motion.  (*Id.* at 27.)

Fourth, the Magistrate Judge minimally reduced Plaintiffs' fee for Sullivan's vague time entries: he excluded 2.25 hours from *Billingsley* because the entry stated only "conference with clients." (*Id.* at 27-28.) Fifth, the Magistrate judge also minimally reduced Plaintiffs' fee for excessive hours. Although Sullivan billed simple tasks such as reviewing setting orders or leaving telephone messages at 0.25 hours, the Magistrate Judge found that such tasks merit only 0.10 of attorney time. (*Id.* at 29.) Therefore, the Magistrate Judge reduced Sullivan's hours in the Motion by 1.5 hours. (*Id.*) Additionally, Plaintiffs requested an enhancement of their attorney's fees by a multiplier of 1.2. After reviewing *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662 (2010), which held that a fee enhancement may not be awarded based on a factor included in the lodestar calculation, the Magistrate Judge concluded that Plaintiffs' requested grounds for enhancement were fairly accounted for in his application of the lodestar factors, thereby not warranting an enhancement. (*Id.* at 29-30.)

Next, the Magistrate Judge turned to Plaintiffs' requested expenses. Defendant objected to several of Plaintiffs' expert witness fees, but Defendant did not persuade the Magistrate Judge that the fees should not be awarded. For example, the Magistrate Judge found Dr. Sharf's expert fees to be reasonable because he reviewed Defendant's procedures in designing its 2002 promotion test and assisted in Plaintiffs' challenge to the sergeant promotion processes used in 2001-2002. (*Id.* at 30-31.) Dr. DeShon's fees were reasonable as well: he rebutted Defendant's experts, analyzed the promotion processes, and reviewed alternative employment practices with potentially less adverse impact on minority plaintiffs, which were relevant to Plaintiffs' Title VII claims. (*Id.* at 31-32.) Moreover, Dr. DeShon's expense entries were not vague because Plaintiffs attached invoices detailing Dr. DeShon's activities. (*Id.* at 32.) Finally, Dr. Parrish

reasonably provided an affidavit supporting Plaintiffs' motion for partial summary judgment, and his fees were not excessive. (*Id.*) And the Magistrate Judge recommended applying a per annum simple interest rate of 2.35% as of December 28, 2006 to the Interim Motion's expenses. (*Id.* at 33.)

Plaintiffs have filed three objections to the R&R. They object to: (1) the use of a $325.00 hourly rate instead of the $375 requested rate and the Magistrate Judge's recommendation not to apply the current rate to all work done in the case, (2) the recommendation not to apply a fee enhancement, and (3) the use of simple interest instead of the requested compound interest rate. (Pls.' Objections, D.E. # 618, at 1.) Defendant also submitted three main objections. It (1) objects to the awarding of fees for Plaintiffs' non-meritorious claims, (2) argues that the fees awarded to Plaintiffs' experts were excessive because the experts had a limited role in the case's litigation, and (3) avers that the $325.00 per hour fee awarded to Sullivan is unreasonable. (Def.'s Objections, D.E. # 619, at 1.)

The Court will discuss the parties' arguments regarding their objections below. The Court has reviewed the portions of the R&R to which the parties have not objected, and the Court agrees with the Magistrate Judge's recommendations as contained in the R&R for the reasons stated in the R&R. Therefore, the Court **ADOPTS** those portions of the R&R to which the parties have not objected.

## STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 636, the Court may refer a motion for attorney's fees to the United States Magistrate Judge for the purpose of submitting proposed findings of fact and

recommendations for the disposition of the motion.[2]  The Court must "make a de novo

determination of those portions of the report or specific proposed findings or recommendations

to which objection is made."[3]  After reviewing the evidence, the Court is free to accept, reject, or

modify the proposed findings or recommendations of the magistrate judge.[4]  The Court need not

review, under a *de novo* or any other standard, those aspects of the report and recommendation to

which no specific objection is made.[5]  Rather the Court may adopt the findings and rulings of the

magistrate judge to which no specific objection is filed.[6]

## ANALYSIS

### Reasonable Hourly Rate

Both parties object to the R&R's recommended hourly rate.  The lodestar method of

determining a reasonable attorney's fee has "achieved dominance in the federal courts."[7]  The

first step in determining an amount of attorney's fees under the lodestar method, which

ultimately approximates the fee the prevailing attorney would have received if he or she had

represented a paying client billed by the hour, examines the prevailing market rates in the

---

[2]     28 U.S.C. § 636(b)(1)(B).

[3]     *Id.* § 636(b)(1)(C).

[4]     *Id.*

[5]     *Thomas v. Arn*, 474 U.S. 140, 150 (1985).

[6]      *Id.* at 151.

[7]     *Perdue v. Kenny A. ex rel. Winn*, 130 S. Ct. 1662, 1672 (2010).

relevant community.[8]  In addition to evidence such as affidavits by attorneys familiar with prevailing rates in the community, other factors to take into account include:

> (1) the time and labor required by a given case; (2) the novelty and difficulty of the questions presented; (3) the skill needed to perform the legal service properly; (4) the preclusion of [other] employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the undesireability of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.[9]

In their Objections, Plaintiffs note that they sought $375 per hour for work after February of 2007 and requested the Court to apply that rate retroactively to all of the hours Sullivan worked in the case to compensate for the delay in payment.[10]  Because the Magistrate Judge's recommendation differs from these requests, Plaintiffs renew them now.  Moreover, they argue that $375 is the prevailing market rate in Memphis for Title VII cases, and they cite to the affidavits submitted by local attorneys accompanying the Supplemental Motion.  Without citing to any legal authority, Plaintiffs state that Defendant did not offer evidence that $375 per hour is an unreasonable rate in Memphis; instead, Defendant offered the affidavit of one of its lead attorneys, but that attorney did not claim that $375 per hour was unreasonable or state that he had knowledge of the prevailing market rate in Memphis.[11]  Plaintiffs point out that the prevailing market rate is presumed reasonable, and they also submit that Judge Donald had approved similar

---

[8]      *Id.* (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)).

[9]      *Reed v. Cracker Barrel Old Country Store, Inc.*, 171 F. Supp. 2d 751, 759 (M.D. Tenn. 2001) (quoting *Reed v. Rhodes*, 179 F.3d 453, 471 n.3 (6th Cir. 1999)).

[10]     (Pls.' Objections, D.E. # 618, at 2.)

[11]     (*Id.* at 3.)

rates in complex civil rights cases during the pendency of this case.[12]  Thus, Plaintiffs request the

Court to apply a rate of $375 per hour to all of the hours Sullivan worked in this case since its

inception.

In response, Defendant avers that it submitted "a great deal of evidence"—the affidavit of

its lead counsel—to rebut Plaintiffs' assertions about the prevailing market rate.[13]  Defendant

relies on cases cited in the R&R to argue that courts in the Western District and the Sixth Circuit

itself generally approve rates lower than the $375 sought by Plaintiffs.[14]  Furthermore, Defendant

submits that Plaintiffs agreed that $250 per hour was a reasonable rate in the Interim Motion, and

then raised that figure by $125 per hour, a 50% increase, in their Supplemental Motion.[15]  Thus,

Defendant argues that applying the $375 per hour rate retroactively would create an

inappropriately large windfall for Plaintiff's attorney, and the R&R's application of simple

interest to the requisite attorney's fees amounts sufficiently compensates Plaintiffs for the delay

in receiving their attorney's fees.[16]  Therefore, the rate for fees since the Interim Motion need not

rise above $250 per hour.

In its Objections, Defendant addresses the R&R's application of a $325 per hour rate for

hours worked from December 28, 2006 to present.  Specifically, Defendant does not object to the

---

[12]     (*Id.* at 4-5.)

[13]     (Def.'s Resp., D.E. # 620, at 2.)  The Court need not decide whether one affidavit
can fairly be characterized as "a great deal of evidence."

[14]     (*Id.* at 3.)

[15]     (*Id.* at 4.)

[16]     (*Id.* at 4-5.)

application of a $250 per hour rate for hours incurred prior to the filing of the Interim Motion, but it does object to the Magistrate Judge's recommendation that hours incurred after the Interim Motion be compensated at the rate of $325 per hour.[17]  Defendant argues that $325 per hour does not reflect the prevailing market rate in Memphis, especially in light of the "economic realities of the preceding five years," including the recession and general economic downturn.[18]  Defendant also cites to a previous Report and Recommendation issued by the same Magistrate Judge and adopted by this Court—without objection by the plaintiffs—that reduced fees to $225-$275 because the requested rates were substantially higher than other attorneys' rates in Memphis.[19]  In response, Plaintiffs rely on their arguments raised in their own Objections.[20]

The Court has considered the parties' objections related to Sullivan's hourly rate, and it will **OVERRULE** the parties' objections and **ADOPT** the hourly rate as detailed in the R&R. The Court finds that the rate of $250.00 per hour for fees requested in the Interim Motion is reasonable: the Court will compensate Sullivan for the delay in awarding his fees by awarding him interest as discussed below.  Therefore, it need not raise the hourly rate to compensate him for the delay in payment.  Moreover, the $325.00 per hour rate for fees in the Supplemental Motion is reasonable: it aligns with the rate charged by Defendant's lead counsel, falls within the market rate for comparable legal services, and factors in the case's duration and complexity.

---

[17]   (Def.'s Objections, D.E. # 619, at 7.)

[18]   (*Id.*)

[19]   (*Id.* at 8.)  The Court notes that neither party objected to the Report and Recommendation in *Oakley v. City of Memphis*, No. 06-2276.

[20]   (Pls.' Resp., D.E. # 621, at 8.)

Because it is moderately higher than other rates approved in this District for other civil rights cases, the Court need not assess interest on fees charged at the $325 per hour rate. The increase in fees adequately compensates Sullivan for the delay in receiving payment. Accordingly, the parties' objections are **OVERRULED**, and this portion of the R&R is **ADOPTED**.

## Fee Enhancement

*Perdue* set forth six principles guiding the application of multipliers to statutory awards of attorney's fees. First, "a 'reasonable' fee is a fee that is sufficient to induce a capable attorney to undertake the representation of a meritorious civil rights case."[21] Second, "the lodestar method yields a fee that is presumptively sufficient to achieve this objective."[22] Third, although the Supreme Court has "never sustained an enhancement of a lodestar amount for performance, . . . [it has] repeatedly said that enhancements may be awarded in 'rare' and 'exceptional' circumstances."[23] Fourth, because the lodestar amount "includes most, if not all, of the relevant factors constituting a 'reasonable' attorney's fee, . . . an enhancement may not be awarded based on a factor that is subsumed in the lodestar calculation."[24] Generally, neither the novelty and complexity of a case nor the quality of an attorney's performance should be used to adjust the lodestar because the reasonable hourly rate reflects these considerations.[25] Fifth, the fee applicant

---

[21] *Perdue*, 130 S. Ct. at 1672.

[22] *Id.* at 1673.

[23] *Id.*

[24] *Id.*

[25] *Id.*

bears the burden of proving enhancement's necessity.[26]  Finally, "a fee applicant seeking an

enhancement must produce 'specific evidence' that supports the award."[27]  Justice Kennedy

provided guidance on the cases meriting a fee enhancement:  "[i]t is proper for the Court today to

reject the proposition that all enhancements are barred; still, it must be understood that

extraordinary cases are presented only in the rarest of circumstances."[28]

In *Perdue*, the Supreme Court concluded that courts must inquire into the existence of

superior attorney performance—not otherwise taken into account by the lodestar

calculation—when determining whether to award an enhancement for superior attorney

performance.[29]  First, "an enhancement may be appropriate where the method used in

determining the hourly rate employed in the lodestar calculation does not adequately measure the

attorney's true market value"—such as if the hourly rate derives from a formula taking into

account only a single factor such as years since admission to the bar or other similar factors.[30]

Second, if litigation is exceptionally protracted and the attorney's performance includes an

extraordinary outlay of expenses, courts must calculate the enhancement using a reasonable and

objective method capable of being reviewed on appeal, "such as applying a standard rate of

interest to the qualifying outlays of expenses."[31]  Finally, compensation for delay can be made by

---

[26]     *Id.*

[27]     *Id.*

[28]     *Perdue*, 130 S. Ct. at 1677 (Kennedy, J., concurring).

[29]     *Id.* at 1674.

[30]     *Id.*

[31]     *Id.* at 1675-76.

basing the award on current rates or adjusting the fee based on historical rates to reflect its present value, but even in the face of such compensation, "an enhancement may be appropriate where an attorney assumes these costs in the face of an unanticipated delay, particularly where the delay is unjustifiably caused by the defense."[32]

In their Objections, Plaintiffs argue that the Magistrate Judge erred by not applying their requested 1.2 multiplier to their lodestar amount. Specifically, they assert that the lodestar does not adequately capture Sullivan's true market value, as he worked as their same attorney throughout "this unduly protracted litigation of [twelve] years (with more to come)" and "was thoroughly familiar with the underlying facts, legal issues, and the specialized field of industrial and organization psychology."[33] Additionally, Plaintiffs aver, without citation to authority, that "[a] valid way to measure [P]laintiffs' [attorney's] true market value is to examine the costs [Defendant] willingly paid its numerous attorneys, which it believed were necessary to defend it."[34] Thus, Plaintiffs argue that these rare and exceptional circumstances merit enhancement of their hourly rate to $450 per hour after application of the multiplier.[35]

In response, Defendant points out that the lodestar carries a "strong presumption" that it is sufficient to compensate Plaintiffs' attorney and that Plaintiffs have not produced specific evidence to rebut the presumption.[36] It argues that Plaintiffs cannot meet their burden to identify

---

[32]    *Id.* at 1675.

[33]    (Pls.' Objections, D.E. # 618, at 7.)

[34]    (*Id.*)

[35]    (*Id.* at 8.)

[36]    (Def.'s Resp., D.E. # 620, at 5.)

a factor not subsumed within the lodestar calculation. Defendant casts Plaintiffs' argument regarding Sullivan's longevity as their attorney as subsumed within several lodestar factors: the skill and experience required, the nature and length of the relationship with the client, and similar awards.[37] Defendant submits that the Court should not rely on its anticipated appeal as justification for the requested fee enhancement: "potential litigation in the future is by no means [a] basis for enhancing the value of fees for past legal services, especially when those fees on appeal are also recoverable."[38] Finally, the case's protracted history should not serve as a ground for the fee enhancement because delay is compensated by the lodestar amount itself.[39]

The Court will not apply a fee enhancement to the lodestar amount. The Court finds that, even factoring in the delay in payment, this case has a procedural posture comparable to many other civil rights cases in this District. Moreover, *Perdue* limits the application of multipliers to cases with factors not already addressed in the lodestar amount. Here, the Court agrees with the Magistrate Judge and Defendant: the lodestar amount and the twelve lodestar factors adequately address all of Plaintiffs' asserted factors for applying a fee enhancement. Accordingly, Plaintiffs' objection is **OVERRULED**, and this portion of the R&R is **ADOPTED**.

<u>**Interest Rate on Attorney's Fees and Expenses**</u>

Awards of prejudgment interest are compensatory, not punitive, and a finding of wrongdoing by the defendant is not a prerequisite to such an award.[40] Although awards of

---

[37]    (*Id.* at 6.)

[38]    (*Id.*)

[39]    (*Id.* at 6-7.)

[40]    *EEOC v. Ky. State Police Dep't*, 80 F.3d 1086, 1098 (6th Cir. 1996).

15

backpay under Title VII ordinarily include compound interest because backpay awards make claimants whole,[41] backpay and attorney's fees do not serve the same purpose. Attorney's fees under Title VII encourage attorneys to take on meritorious cases.[42] Therefore, the decision of whether to award simple or compound interest should serve that purpose.[43]

In their Objections, Plaintiffs argue that applying a simple interest rate, rather than a compound interest rate, to their attorney's fees and expenses will not make them whole.[44] Plaintiffs cite to case law from the Second Circuit and argue that the Court will abuse its discretion if it does not award compound interest.[45] In response, Defendant points out that Plaintiffs have not produced any authority requiring the Court to apply a compound interest rate to an award of attorney's fees and expenses.[46] After distinguishing Plaintiffs' Second Circuit case and pointing out the differences between backpay and attorney's fees, it submits that district courts have wide discretion to award simple or compound interest, and it states that an award of simple interest will adequately compensate Plaintiffs.[47]

Despite its research, the Court cannot find guidance on how to choose between applying compound or simple interest to a request for attorney's fees. And the parties have not directed

---

[41]     *See id.* (quoting *Saulpaugh v. Monroe Cmty. Hosp.*, 4 F.3d 134, 145 (2d Cir. 1993)).

[42]     *See Coulter v. Tennessee*, 805 F.2d 146, 148 (6th Cir. 1986).

[43]     *See id.*

[44]     (Pls.' Objections, D.E. # 618, at 8.)

[45]     (*Id.* at 8-9.)

[46]     (Def.'s Resp., D.E. # 620, at 7.)

[47]     (*Id.*)

the Court to factors or guidelines to apply when choosing compound or simple interest. Although Plaintiffs direct the Court to cases encouraging the application of compound interest to awards of backpay, the Court finds that the different purposes of backpay and attorney's fees distinguish this reasoning. Backpay makes Title VII plaintiffs whole; attorney's fees encourage lawyers to take difficult, complex, and other cases they may not otherwise take. Applying this latter purpose to this case, the Court finds that the R&R's suggested interest rate of 2.35% per annum is reasonable. Judge Donald applied a 2.35% per annum interest rate to Plaintiffs' backpay award, and the R&R borrows this rate and applies it to Plaintiffs' attorney's fees as well. As such, the Court agrees with the R&R's recommendation to apply this interest rate to its calculation of attorney's fees. Moreover, neither party objected to this interest rate.

However, the Court disagrees with the R&R's method of calculating interest. Although the R&R recommended a simple interest rate, the Court finds that this case's circumstances merit the application of compound interest. First, the parties have litigated this case for over twelve years, and Plaintiffs' counsel has not received payment of attorney's fees under Title VII. Second, the Court finds the purpose of awarding attorney's fees under Title VII to be important to its decision: other cases' comparable complexity and longevity could discourage attorneys from taking them, potentially leaving important rights unvindicated. Accordingly, with these factors in mind, the Court will award compound interest at the rate of 2.35% per annum to the attorney's fees and expenses requested in the Interim Motion. As discussed above, the Court will not award interest for attorney's fees or expenses requested in the Supplemental Motion. Therefore, Plaintiffs' objection is **SUSTAINED**, and the Court **DECLINES** to adopt this portion of the R&R.

17

## Award of Attorney's Fees to Unsuccessful Non-Minority Plaintiffs

Attorney's fees can be adjusted upward or downward based on the results obtained in the case.[48] Sometimes plaintiffs bring lawsuits on "distinctly different claims for relief that are based on different facts and legal theories;" in such cases, "even where the claims are brought against the same defendants, . . . counsel's work on one claim will not be related to his work on another claim. Accordingly, work on an unsuccessful claim cannot be deemed to have been 'expended in pursuit of the ultimate result achieved.'"[49] Thus, unrelated claims must be treated as though they had been raised in separate lawsuits, and no fee may be awarded for services on unsuccessful claims.[50] The Supreme Court has identified three core areas rendering claims sufficiently "related" to recover attorney's fees: when "much of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis," when "the plaintiff's claims for relief will involve a common core of facts or will be based on related legal theories," or when the case presents "only a single claim."[51]

In its Objections, Defendant argues that Plaintiffs should not receive attorney's fees for the hours spent on the unsuccessful non-minority *Johnson I* Plaintiffs' claims because those claims are unrelated to successful claims.[52] Defendant avers that "the facts associated with the unsuccessful non-minority Plaintiffs' race discrimination claims are entirely distinguishable from

---

[48]     *See Hensley v. Eckerhart*, 461 U.S. 424, 434 (1983).

[49]     *Id.* at 434-35.

[50]     *Id.* at 435.

[51]     *Id.*

[52]     (Def.'s Objections, D.E. # 619, at 2-3.)

18

the disparate impact claims of the successful minority Plaintiffs."[53]  Thus, Defendant submits that the Interim Motion's attorney's fees should be adjusted proportionally to account for the non-minority Plaintiffs' unsuccessful claims and states that a 31% reduction would be sufficient.[54]

In response, Plaintiffs argue that Defendant has not provided any specific evidence establishing that this case is one of the "rare and exceptional" cases meriting a reduction for unsuccessful claims.[55]  Furthermore, they contend that no basis exists for reducing attorney's fees "when the work performed was related and necessary for the minority [P]laintiffs to prevail on their disparate impact race discrimination claim."[56]  Plaintiffs distinguish a case from the Southern District of New York relied on by Defendant, and they urge the Court to adopt the R&R's recommendation that no reduction in fees is necessary based on the allegedly limited success of the allegedly non-minority Plaintiffs.[57]

The Court disagrees with Defendant: the non-minority Plaintiffs' claims significantly relate to the same factual circumstances forming the basis for the minority Plaintiffs' claims because both groups of plaintiffs sought to invalidate Defendant's promotion process.  Therefore, the Court finds that the non-minority Plaintiffs' claims share a common factual core with the minority Plaintiffs' claims, and the Court will not reduce Plaintiffs' attorney's fees to account for

---

[53]     (*Id.* at 3.)

[54]     (*Id.* at 4.)

[55]     (Pls.' Resp., D.E. # 621, at 2.)

[56]     (*Id.* at 3.)

[57]     (*Id.* at 4-5.)

the non-minority Plaintiffs' unsuccessful claims.  For these reasons and the reasons stated in the R&R, Defendant's objection is **OVERRULED**, and this portion of the R&R is **ADOPTED**.

### <u>Award of Attorney's Fees for Unsuccessful Claims by the Minority Plaintiffs</u>

Whenever a plaintiff accomplishes excellent results, his or her attorney should recover a fully compensatory fee.[58]  Even if he or she fails to prevail on every issue raised in the lawsuit, the fee award does not necessarily merit reduction.  For example, "[l]itigants in good faith may raise alternative legal grounds for a desired outcome, and the court's rejection of or failure to reach certain grounds is not a sufficient reason for reducing a fee.  The result is what matters."[59] Indeed, the most critical factor is the degree of success obtained,[60] and this degree can be evaluated by examining whether the hours reasonably expended in the litigation justify the relief obtained.[61]  District courts should reduce attorney's fees only in rare and exceptional circumstances where specific evidence in the record requires it; "a proffer of alternative arguments does not justify reducing an award, especially where the arguments were made on a common set of facts and success on just one of the arguments would achieve the hoped-for results."[62]

---

[58]        *Hensley*, 461 U.S. at 435.

[59]        *Id.*

[60]        *Id.* at 436.

[61]        *Id.* at 435 n.11.

[62]        *Isabel v. City of Memphis*, 404 F.3d 404, 416 (6th Cir. 2005) (declining to reduce attorney's fees by 53% despite plaintiffs' success on only one of four claims because plaintiffs "could not have achieved better results").

In its Objections, Defendant argues that the R&R erroneously included attorney's fees associated with the minority Plaintiffs' unsuccessful claims. It points out that the minority Plaintiffs did not succeed on seven of their nine legal theories and that the seven "unrelated, unsuccessful claims" do not merit an award of attorney's fees.[63] In response, Plaintiffs argue that the Sixth Circuit has rejected Defendant's argument and that proffering alternative arguments does not justify reducing an award.[64] Plaintiffs submit that the invalidity of the 2000 promotional process was the "common factual core" tying all of their claims together and rendering them sufficiently related to merit an award of attorney's fees.[65] They also note that even "[i]f the minority Plaintiffs had succeeded on any other claim or even two or more claims, they would not have received anything more than what they obtained by prevailing on their Title VII disparate impact claim."[66]

Again, the Court disagrees with Defendant's constrained definition of success. Plaintiffs received the same relief that they requested in their Complaint: although they presented nine different methods of arriving at that relief, and Judge Donald agreed with only two, those two theories gave Plaintiffs all of the relief they requested. Judge Donald's disagreement with Plaintiffs' alternative theories does not merit a reduction in Plaintiffs' attorney's fees. Plaintiffs prevailed in this case to the degree they initially envisioned upon filing the lawsuit: accordingly, they accomplished a high degree of success. The Court will not reduce Plaintiffs' requested

---

[63]     (Def.'s Objections, D.E. # 619, at 5.)

[64]     (Pls.' Resp., D.E. # 621, at 6.)

[65]     (*Id.*)

[66]     (*Id.*)

attorney's fee for their alleged lack of success. Therefore, the Court **OVERRULES** Defendant's objection and **ADOPTS** this portion of the R&R.

### Dr. DeShon's Expert Fees

In its Objections, Defendant argues that Dr. DeShon's fee stems from his evaluation of the validity and reliability of the 2002 promotional process, and it notes that Judge Donald rejected Plaintiffs' challenges to this promotional process.[67] Because Dr. DeShon's analysis did not contribute to Plaintiffs' success, Defendant requests the Court to reduce his fees by 50% "to more accurately reflect the unsuccessful legal claims."[68] In response, Plaintiffs argue that Dr. DeShon's participation in the lawsuit was not limited; rather, he "provided statistical analysis showing the disparate impact caused by the 2000 test and every single test and assessment used in the 2001-2002 retest."[69] They point out that Dr. DeShon's review of alternative employment practices was relevant to Plaintiffs' Title VII claims, and they argue that his fees should not be reduced.[70]

The Court finds that Dr. DeShon's expertise contributed to Plaintiffs' success. As Plaintiffs state, his participation in the lawsuit related to Plaintiffs' Title VII claims and was not limited to a single area of the litigation. Accordingly, the Court will not reduce Plaintiffs' expenses related to Dr. DeShon. Therefore, Defendant's objection is **OVERRULED**, and this portion of the R&R is **ADOPTED**.

---

[67] (Def.'s Objections, D.E. # 619, at 6.)

[68] (*Id.*)

[69] (Pls.' Resp., D.E. # 621, at 7.)

[70] (*Id.*)

## CONCLUSION

For the foregoing reasons, the Magistrate Judge's R&R is **ADOPTED IN PART**, Plaintiffs' Interim Motion is **GRANTED IN PART AND DENIED IN PART**, and Plaintiffs' Supplemental Motion is **GRANTED IN PART AND DENIED IN PART**.  Therefore, attorney's fees and expenses are awarded in the following amounts:

- $528,577.50 plus compound interest for attorney's fees for hours expended prior to the Interim Motion.  (2,116.81 total hours - 2.5 deducted hours x $250 per hour.)  Applying 2.35% per annum compound interest from December 28, 2006 to August 23, 2012, would yield a compound interest payment of $74,255.78.

- $212,160.00 in attorney's fees for hours expended after the Interim Motion.  (652.80 total hours x $325 per hour.)

- $156,466.26 plus compound interest for expenses incurred prior to the Interim Motion (after deducting $5,150 withdrawn by Plaintiffs).  Applying 2.35% per annum compound interest from December 28, 2006 to August 23, 2012, would yield a compound interest payment of $21,980.75.

- $3,950.20 for expenses incurred after the Interim Motion.

  **IT IS SO ORDERED**.


**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: August 23, 2012.