**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

| | | |
|---|---|---|
| **MARILYN JOHNSON et al.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| **v.** | ) | **No. 00-2608-STA-tmp** |
| | ) | **No. 04-2017-STA-tmp** |
| **CITY OF MEMPHIS,** | ) | |
| | ) | |
| **Defendant.** | ) | |

**ORDER GRANTING IN PART, DENYING IN PART PLAINTIFFS' MOTION FOR
ATTORNEY'S FEES AND EXPENSES**

Before the Court is Plaintiffs Marilyn Johnson *et al.*'s Motion for Attorney's Fees and Expenses (ECF No. 671) filed on January 25, 2016. Defendant City of Memphis has responded in opposition, and the parties have submitted supplemental briefing at the Court's direction. For the reasons set forth below, Plaintiffs' Motion for Attorney's Fees and Expenses is **GRANTED in part, DENIED in part**.

## BACKGROUND

**I. Procedural History**

The full factual and procedural history of these consolidated police promotions cases has been exhaustively set out in the previous orders of the Court and in two appellate opinions from the United States Court of Appeals for the Sixth Circuit, most recently in *Johnson v. City of Memphis*, 770 F.3d 464 (6th Cir. 2014). Briefly, on March 4, 2013, the Court entered judgment in favor of the Plaintiffs in each of the cases. The Court and the parties have referred to the cases simply as *Johnson I* (no. 00-2608-STA-tmp), *Billingsley* (no. 04-2013-STA-tmp), and *Johnson II* (no. 04-2017-STA-tmp). The Court granted all Plaintiffs, officers of the Memphis Police

Department, remedies for Defendant's violations of Title VII of the Civil Rights Act of 1964 as part the City's administration of police promotion tests in 2000 and 2002.

In addition to the remedies granted to all Plaintiffs, the Court issued a series of orders awarding Plaintiffs their reasonable attorney's fees. On August 23, 2012, the Court granted in part and denied in part Plaintiffs' interim motion for attorney's fees and supplemental motion for attorney's fees (ECF No. 623). Specifically, the Court awarded Plaintiffs the following attorney's fees and expenses:

• $528,577.50 plus compound interest for 2,116.81 hours worked from the initiation of the case to February 2007 at a rate of $250 per hour;

• $212,160.00 for 652.80 hours worked from February 2007 February 2012 at a rate of $325 per hour;

• $156,466.26 plus compound interest for expenses incurred prior to February 2007; and

• $3,950.20 for expenses incurred after February 2007.

In a subsequent order entered on May 13, 2013, the Court granted in part and denied in part Plaintiff's supplemental motion for attorney's fees and expenses (ECF No. 649), awarding Plaintiffs an additional $28,990.00 in attorney's fees for 89.20 hours of work performed between February 2012 and March 2013. Both sides' appealed the Court's judgment.

On October 27, 2014, the Sixth Circuit issued an opinion, reversing the Court's judgment in favor of the Plaintiffs in *Billingsley* and *Johnson II* on their Title VII disparate impact claims related to the 2002 promotions process. The Court of Appeals held that "[b]ecause plaintiffs failed to present evidence establishing a genuine issue of fact regarding the availability of equally valid, less discriminatory alternative testing methods, their step-three

showing [as to the 2002 process] fails as a matter of law."[1]  The Sixth Circuit therefore reversed "the district court's Title VII judgment invalidating the 2002 process, thereby MOOTING plaintiffs' challenge to the district court's choice of remedies for the 2002 process," vacated the award of attorney's fees, and remanded the case "for further consideration in light of these developments."[2]

On December 30, 2014, the Court of Appeals denied Plaintiffs petition for rehearing *en banc*, and on October 9, 2015, the United States Supreme Court denied Plaintiffs' petition for a writ of certiorari.  At the conclusion of appellate review, the Court ordered the parties to file all motions and requests for relief to bring this matter to a conclusion.  Plaintiffs' Motion for Attorney's Fees and Expenses was one of the post-remand motions filed by the parties.  On May 10, 2016, the Court also entered an Order Granting Plaintiffs' Motion to Dissolve the Stay of Execution and Denying Defendant's Motion to Vacate Judgment and Enter a New Judgment (ECF No. 684).  The Court held that at this stage of the proceedings, the City of Memphis had waived or forfeited any challenge to the Court's earlier rulings regarding the City's 2000 process because Defendant had not raised those rulings as an issue on appeal to the Sixth Circuit. Therefore, the Court concluded that Plaintiffs were entitled to have the stay of execution on their favorable judgment as to the 2000 process dissolved and that Defendant was not entitled to a vacation of the judgment as to the 2000 process.

## II. Plaintiffs' Motion for Attorney's Fees and Expenses

Counsel for Plaintiffs has incorporated by reference his previous filings with the Court requesting attorney's fees and submitted additional briefing. In their opening brief, Plaintiffs argue that after the Sixth Circuit's reversal of the judgment as to the 2002 process, Plaintiffs

---

[1] *Johnson v. City of Memphis*, 770 F.3d 464, 477-78 (6th Cir. 2014).

[2] *Id.* at 485.

continue to be the prevailing parties on their Title VII claims related to the 2000 police promotion testing. Plaintiffs argue that they have obtained an excellent result in this case, promotion with backpay and a retroactive seniority designation. Therefore, counsel is entitled to a fully compensatory award of fees and expenses. In short, Plaintiffs argue that the Court should grant them a reasonable attorney's fee for all work performed by counsel in *Johnson I* and *Johnson II*. Counsel for Plaintiffs, who represented all Plaintiffs in *Johnson I*, *Billingsley*, and *Johnson II*, has removed all hours worked in connection with *Billingsley*. Plaintiffs make an additional request for supplemental attorney's fees in the amount of $10,936.25 for 33.65 hours worked between October 27, 2014 and January 23, 2016.

Defendant has responded in opposition to Plaintiff's opening brief. Defendant argues that Plaintiffs are not entitled an award of fees for any work performed in *Billingsley* or *Johnson II*. Plaintiffs were not the prevailing parties on any of the claims raised in those cases. Furthermore, Plaintiffs cannot treat *Johnson I* and *Johnson II* as one lawsuit. According to the City, *Billingsley* and *Johnson II* were identical suits presenting identical claims for relief based on allegations about the 2002 promotions process. Plaintiffs have failed to show then why they are entitled to attorney's fees for work performed in *Johnson II* when Plaintiffs concede that they are not entitled to attorney's fees for *Billingsley*. The consolidation of the three cases is irrelevant to the issue of whether Plaintiffs are entitled to fees for counsel's services in *Johnson II*. Each suit continued to have its own distinct identity, and Plaintiffs' success as to one set of claims has no bearing on their failure to prevail on other claims.

The City argues that because Plaintiffs failed to separate out supporting exhibits for time in *Johnson I* and *Johnson II*, the Court should deny the Motion to Attorney's Fees outright. And to the extent that the Court decides to award fees, the Court should limit the award to time

worked on *Johnson I* and then only to counsel's time worked prior to the City consenting to summary judgment in June 2001 on the *Johnson I* Plaintiffs' claim that the 2000 process violated municipal law.  The City further argues that many of counsel's time entries after June 2001 focus on the development of a replacement test, which became the testing modality utilized in the 2002 promotions process.  The City contends that the Court should not award Plaintiffs any attorney's fees for this time.  According to the City, counsel has shown that he devoted 272.8 hours of work to the *Johnson I* case before June 25, 2001, time which the City concedes is compensable.  Otherwise, the Court granted the *Johnson I* Plaintiffs summary judgment on their Title VII disparate impact claim on February 4, 2005, and then addressed the remedies for this violation in a memorandum opinion issued on December 28, 2006.  Defendant argues then that the *Johnson I* Plaintiffs are entitled to an award of fees only for the limited time entries where counsel was clearly advancing claims on behalf of *Johnson I* and only *Johnson I*.  Based on an hourly rate of $250 per hour, the City concludes that Plaintiffs are entitled to attorney's fees in the amount of $68,200.00.

Following its ruling on a number of other post-remand motions filed by the parties, the Court entered an order on August 9, 2016 (ECF No. 691), directing Plaintiffs to file a supplemental brief on the attorney's fees issue.  The Court observed that counsel for Plaintiff had eliminated 22.5% of the fees that the Court previously awarded and 40% of the expenses and that the eliminated fees and expenses all related to the litigation over the 2002 promotions process.  However, the Court found that Plaintiffs' opening brief did not indicate what methodology counsel for Plaintiff used to make the reductions in his post-remand fee petition.  The Court instructed Plaintiffs to file a supplemental brief to specify what hours counsel had eliminated and how he chose those specific hours.  Plaintiffs filed their supplemental brief on August 23, 2016.

In their supplement brief and subsequent reply, Plaintiffs argue that even though the Court of Appeals reversed the judgment in favor of the *Johnson II* Plaintiffs, the Court should nevertheless award counsel a reasonable fee and expenses in connection with *Johnson II*. Plaintiffs make a number of arguments in support of their request. First, the Court granted Defendant's motion to consolidate all three cases on November 17, 2004. In making the determination that consolidation was appropriate, the Court concluded that the cases had common issues of law and fact and that consolidation would conserve judicial resources. The consolidation of the cases recognized the reality that *Johnson II* was merely a continuation of the claims presented in *Johnson I*. The parties conducted all discovery in the consolidated cases, and the Court tried the claims in all three cases in a single bench trial. Second, the issues in *Johnson I* and *Johnson II* overlap. Not only did the Court consolidate *Johnson I* and *Johnson II* for all further proceedings, the Court granted the *Johnson I* Plaintiffs leave to amend their pleadings in February 2004 and add claims for relief based on the results of the 2002 police promotions process. Plaintiffs argue that they only filed a separate judicial complaint to initiate *Johnson II* because the statute of limitations on their claims as to the 2002 process was about to expire. The Court should hold then that *Johnson I* and *Johnson II* are related cases such that the *Johnson* Plaintiffs' lack of success on their claims about the 2002 process does not preclude an award of fees for their case as a whole. As such, Plaintiffs are entitled to an award of their reasonable attorney's fees and expenses.

Defendant has filed a supplemental brief responding to Plaintiffs' supplemental brief, reiterating many of the arguments raised in its previous memorandum. While continuing to argue that consolidation did not merge *Johnson I* and *Johnson II* into a single suit and that Plaintiffs have failed to support their request properly, Defendant further argues that the Court

should reduce Plaintiffs' award. Instead of granting Plaintiffs a windfall for all work performed in "*Johnson*," the Court should arrive at a reasonable fee for *Johnson I* only. The City proposes that the Court treat *Billingsley* and *Johnson II* as largely identical suits. Using counsel's previous submissions about compensable time in *Billingsley*, the Court should assume that counsel expended an equal amount of time in *Johnson II* and deduct that amount from Plaintiffs' total fee request for the "*Johnson* case." Defendant also requests that the Court reduce the amount of fees for the early stages of *Johnson I* by 25 percent owing to the fact that much of the work on the case focused on the development of the replacement test and not the *Johnson I* Plaintiffs' substantive claims for relief.

## STANDARD OF REVIEW

The Civil Rights Attorney's Fees Awards Act of 1976, 42 U.S.C. § 1988, grants a district court discretion to allow "the prevailing party . . . a reasonable attorney's fee as part of the costs."[3] Congress enacted the statute "with the specific goal of ensuring that victims of civil rights violations will be provided with effective access to the judicial process because the private market for legal services fails to provide many victims with such access."[4] Of course, "[a] plaintiff must be a 'prevailing party' to recover an attorney's fee under § 1988."[5] Typically, a plaintiff is a "prevailing party" if the plaintiff "succeed[s] on any significant issue in litigation which achieves some of the benefit the parties sought in bringing suit."[6] It is then for the district court to determine what fee is reasonable. The Supreme Court has held that "[t]he most useful

---

[3] 42 U.S.C. § 1988(b).

[4] *Ohio Right to Life Soc., Inc. v. Ohio Elections Com'n*, 590 F. App'x 597, 600–01 (6th Cir. 2014) (quoting *City of Riverside v. Rivera*, 477 U.S. 561, 576 (1986) (internal quotation marks omitted).

[5] *Hensley v. Eckerhart,* 461 U.S. 424, 433 (1983).

[6] *Id.* (quoting *Nadeau v. Helgemoe,* 581 F.2d 275, 278–279 (1st Cir. 1978)).

starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate," an "objective basis on which to make an initial estimate of the value of a lawyer's services."[7]  Once the district court has arrived at this lodestar calculation, the court may "adjust the fee upward or downward" depending on "other considerations," "including the important factor of results obtained."[8]

"Where a plaintiff has obtained excellent results, his attorney should recover a fully compensatory fee."[9]  "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed," and "[w]here the documentation of hours is inadequate, the district court may reduce the award accordingly."[10]  District courts are not required to assess a reasonable fee as "green-eyeshade accountants" and "achieve auditing perfection."[11]  Only "rough justice" is required, meaning "the court can rely on estimates based on its overall sense of a suit."[12]  In any case, "[a] request for attorney's fees should not result in a second major litigation."[13]

## ANALYSIS

---

[7] *Id.*

[8] *Id.* at 434.

[9] *Id.* at 435.

[10] *Id.* at 433.

[11] *Fox v. Vice*, 563 U.S. 826, 838 (2011).

[12] *Id.*

[13] *Hensley*, 461 U.S. at 437.

**I. *Johnson I* Plaintiffs' Entitlement to Attorney's Fees**

The Court holds that the *Johnson I* Plaintiffs are entitled to a reasonable attorney's fee. The *Johnson I* Plaintiffs were the prevailing parties on their Title VII disparate impact claim and clearly achieved "the benefit [they] sought in bringing the suit." The *Johnson I* Plaintiffs received promotions to the rank of sergeant with backpay as remedies for the disparate impact the 2000 process had on minority officers in violation of Title VII. It cannot seriously be disputed that the *Johnson I* Plaintiffs were "prevailing parties" for purposes of 42 U.S.C. § 1988. Therefore, the *Johnson I* Plaintiffs are entitled to a reasonable attorney's fee.

But as with so many issues in this long-running dispute, this straightforward conclusion is not the end of the matter. The *Johnson I* Plaintiffs succeeded on only their Title VII disparate impact claim and no other. Plaintiffs argue nevertheless that the *Johnson I* Plaintiffs' claims about the 2000 process shared common questions of fact and law with the claims raised about the 2002 process, including the claims alleged in *Johnson II*. Both *Johnson I* and *Johnson II* involved some of the same Plaintiffs: a subset of *Johnson I* Plaintiffs, police officers who did not receive passing scores on the 2002 retest, were also Plaintiffs in *Johnson II*. The same counsel represented both the *Johnson I* Plaintiffs and the *Johnson II* Plaintiffs. And in recognition of the common issues of fact and law, the Court consolidated *Johnson I* with *Billingsley* and *Johnson II* for discovery and trial. For these reasons Plaintiffs have characterized *Johnson I* and *Johnson II* not as two separate cases but simply as "the *Johnson* case." Plaintiffs argue then that the fact that "the *Johnson* Plaintiffs" prevailed on less than all of their claims should not prevent them from recovering attorney's fees for all of counsel's time reasonably expended on both suits.

The first issue presented then is whether the *Johnson I* Plaintiffs are entitled to attorney's fees for work counsel performed in the course of the *Johnson II* litigation. The Court holds that they are not. It is undisputed that the *Johnson II* Plaintiffs did not prevail on any of the causes of action alleged in *Johnson II*. The Court concludes then that even though some of the same officers were Plaintiffs in *Johnson I* and *Johnson II*, the *Johnson II* Plaintiffs were not prevailing parties under any definition of the term. Therefore, the *Johnson II* Plaintiffs are not entitled to an award of attorney's fees.

In order to get around this inescapable conclusion, the *Johnson I* Plaintiffs cite two events of procedural significance to support their claims that the two had become one: the consolidation of all three cases and the fact that the Third Amended Complaint in *Johnson I* included claims about the 2002 promotion process. The Court finds neither argument convincing. First, the act of consolidation does not show that *Johnson I* and *Johnson II* somehow became the same suit. The law is well-settled that "[c]onsolidation is permitted as a matter of convenience and economy in administration, but does not merge the suits into a single cause, or change the rights of the parties or make those who are parties in one suit parties in another."[14] Plaintiffs' argument about consolidation fails for this reason alone.

Plaintiffs highlight that the Court consolidated *Johnson I*, *Billingsley*, and *Johnson II* based on a finding that the cases "share common questions of law and fact."[15] However, this single statement in the Court's order granting Defendant's motion to consolidate was the extent

_____

[14] *Kraft, Inc. v. Local Union 327, Teamsters, Chauffeurs, Helpers & Taxicab Drivers*, 683 F.2d 131, 133 (6th Cir. 1982) (quoting *Johnson v. Manhattan Railway Co.*, 289 U.S. 479, 496-97 (1933)).

[15] Order Granting Def.'s Mot. to Consolidate 1, Nov. 16, 2004 (ECF No. 298).

of the Court's findings about the commonality of the three suits.  In point of fact, Defendant's memorandum in support of its motion to consolidate argued that "[a]ll three cases involve the core question of the validity of the 2001/2002 retest" including "[t]he central facts surrounding the development and administration of the 2001/2002 retest, as well as promotions made in January 2003."[16]  In other words, the City argued that the cases were suitable for consolidation because they shared a number of common facts and legal claims about the 2002 process. Plaintiffs never responded to the City's motion to consolidate, and the Court entered a rather short order granting the motion.  The record does not bear out Plaintiffs' argument that consolidation based on the common questions of fact and law concerning the 2002 process somehow made the *Johnson I* claims about the 2000 process related claims.

As for the *Johnson I* Plaintiffs' second argument, the *Johnson I* Plaintiffs contend that their amended pleadings alleged claims based on the 2002 promotion process and that they filed a separate action, *Johnson II*, merely to beat the statute of limitations.  As the prevailing party as to the 2000 process, the *Johnson I* Plaintiffs argue that they are entitled to attorney's fees for all work performed as part of *Johnson I*, even on their unsuccessful claims about the 2002 process. It is true that the *Johnson I* Plaintiffs' Third Amended Complaint (ECF No. 187) alleged claims against the City arising out of the 2002 promotions process.  It is likewise true that the *Johnson I* Plaintiffs prevailed on their Title VII claims as to the 2000 promotion process and received significant relief.  The Supreme Court in *Hensley* remarked that the "results obtained" factor is particularly relevant to the fee determination "where a plaintiff is deemed 'prevailing' even though he succeeded on only some of his claims for relief."[17]  In a situation of this kind, *Hensley*

---

[16] Def.'s Mem. in Support of Mot. to Consolidate 3, Oct. 14, 2004 (ECF No. 270).

[17] *Hensley*, 461 U.S. at 433.

counsels that the district court should consider two questions: (1) "did the plaintiff fail to prevail on claims that were unrelated to the claims on which he succeeded?" and (2) "did the plaintiff achieve a level of success that makes the hours reasonably expended a satisfactory basis for making a fee award?"[18]

In answering *Hensley*'s first question, the Court holds that that the *Johnson I* Plaintiffs' claims concerning the 2002 process were unrelated to their claims about the 2000 process. Claims are related where they share "a common core of facts" or are "based on related legal theories."[19] In a case involving mixed success on related claims, the district court's fee analysis "should focus on the significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation."[20] A court cannot view such a mixed case "as a series of discrete claims" because "[m]uch of counsel's time will be devoted generally to the litigation as a whole, making it difficult to divide the hours expended on a claim-by-claim basis."[21] But where as here a plaintiff alleges "in one lawsuit distinctly different claims for relief that are based on different facts and legal theories," the court in making its fee determination should treat the unrelated claims "as if they had been raised in separate lawsuits" and deny a fee award "for services on the unsuccessful claim."[22]

---

[18] *Id.* at 434.

[19] *Id.* at 435.

[20] *Id.*

[21] *Id.*

[22] *Id.*

The *Johnson I* Plaintiffs' claims about the 2000 process were not related to their claims about the 2002 process. As a result, the Court will treat the unrelated claims "as if they had been raised in separate lawsuits." Each set of claims has a completely distinct and independent factual basis. Each promotions process occurred at different times, meaning each set of Plaintiffs' causes of action accrued at different times. Each process consisted of different testing modalities, on which the parties' expert witnesses offered distinct opinions. Due to the distinct factual differences, the Court separately analyzed and considered the legal question of how each process had a disparate impact on minority officers. Even the procedural posture of each set of claims was entirely distinct. The Court reached the issue of the City's liability on the Title VII disparate impact claims as to each process in separate orders and arrived at its conclusions for entirely separate reasons. As the Court held in its order granting the *Johnson I* Plaintiffs summary judgment on their disparate impact claim for the 2000 process, the *Johnson I* Plaintiffs showed that the written test in the 2000 process caused a disparate impact on minority officers, and Defendant failed to carry its burden to show that the test was job-related or a business necessity.[23] By contrast, the Sixth Circuit held on appeal that all Plaintiffs had "failed to present evidence establishing a genuine issue of fact regarding the availability of equally valid, less discriminatory alternative testing methods" with respect to the 2002 process, and therefore "their step-three showing fails as a matter of law."[24] The fact that the 2002 process was a replacement test designed to correct the flaws in the 2000 process and that some of the same officers took both tests is certainly relevant but does not alter the Court's conclusion that the claims concerning each process were not related. Therefore, counsel for the *Johnson I* Plaintiffs' "work

---

[23] Order Granting Pls.' Mot. for Partial Summ. J. 7-8, Feb. 4, 2005 (ECF No. 306).

[24] *Johnson v. City of Memphis*, 770 F.3d 464, 477–78 (6th Cir. 2014).

on an unsuccessful claim cannot be deemed to have been expended in pursuit of the ultimate result achieved."[25]

The Court would add here that the threshold issue on remand has been whether the Sixth Circuit's reversal as to the 2002 process had any effect on the *Johnson I* Plaintiffs' favorable judgment as to the 2000 process. The Court has held that the two claims are independent of each other and that the Sixth Circuit's mandate did not disturb the Court's judgment in favor of the *Johnson I* Plaintiffs on their Title VII disparate impact claim about the 2000 process. While this holding is not dispositive of the fee determination, the Court's holding that the *Johnson I* Plaintiffs' separate Title VII claims for the 2000 process and the 2002 process are unrelated for purposes of a fee determination is consistent with its other post-remand rulings.

Therefore, the Court concludes that the *Johnson II* Plaintiffs were not prevailing parties and are thus not entitled to attorney's fees. The *Johnson I* Plaintiffs are prevailing parties for purposes of their successful Title VII claims as to the 2000 process but are not entitled to attorney's fees for their unrelated claims about the 2002 process. Having determined the scope of the "results obtained" by the *Johnson I* Plaintiffs, the Court now turns to the amount of a reasonable attorney's fee.

## II. Amount of Reasonable Attorney's Fee

The *Johnson I* Plaintiffs seek a total award of attorney's fees and expenses in the amount of $860,241.00. The parties' briefs have addressed the reasonableness of the fees sought for

---

[25] *Hensley*, 461 U.S. at 434-35 (citing *Davis v. Cnty. of Los Angeles*, 8 E.P.D. ¶ 9444, at 5049 (C.D. Cal. 1974)).

each stage or phase of the case. The Court will analyze the attorney's fees and expenses in the same way.

**A. First Interim Award: June 2000 to February 2007**

For the period from the filing of their suit through February 2007, the *Johnson I* Plaintiffs seek attorney's fees in the amount of $382,437.50 for 1,529.75 hours at a rate of $250.00 per hour. The *Johnson I* Plaintiffs also seek expenses for this interim in the amount of $97,966.10. Defendant argues that the amount of hours is excessive because it largely represents time counsel spent pursuing claims about the 2002 process. Defendant specifically argues that the Court had decided the merits of the *Johnson I* Plaintiffs' claims by June 2001 when the Court granted the *Johnson I* Plaintiffs' unopposed motion for summary judgment on the issue of whether the 2000 process violated municipal law. The Court would note that Judge Donald ultimately did not grant the *Johnson I* Plaintiffs any relief on this claim. In fact, the parties continued to conduct discovery on both the 2000 process as well as work to develop the 2002 process for some time after June 2001. The *Johnson I* Plaintiffs filed their motion for summary judgment on their disparate impact claims on September 28, 2004, and the Court granted the motion on February 4, 2005. The bench trial on the remaining claims in all three cases, including the proper remedy for the *Johnson I* Plaintiffs on their Title VII disparate impact claim, was held in July 2005. Judge Donald issued her memorandum opinion and order on remedies on December 28, 2006. And as the *Johnson I* Plaintiffs' have shown, the parties continued to litigate the backpay issue, the issue of interim attorney's fees, and several requests for injunctive relief beyond December 2006. The Court cannot agree that *Johnson I* was effectively decided by June 2001 or that the *Johnson I* Plaintiffs' attorney's fee should be largely limited to this early phase of the case.

At the same time, it is clear from the exhibits filed by the *Johnson I* Plaintiffs that much of the time submitted for this interim includes time counsel spent litigating the 2002 process. The Court is not inclined to conduct a line-by-line examination of counsel's billing statements to determine which time entries reflect work on *Johnson I*'s claims about the 2000 process and which the claims about the 2002 process, particularly as "auditing perfection" is not required.[26] Counsel's billing statement is nearly seventy-nine pages long and contains entries for 1,532.25 hours of time. Defendant has proposed that the Court reduce the overall hours total by 584 hours. The Court finds Defendant's proposal to be well-taken. Plaintiffs' previous submissions on attorney's fees show that counsel spent 584 hours working on *Billingsley* during this interim. In this phase of the litigation leading up to trial, *Billingsley* and *Johnson II* presented virtually identical facts, legal claims, and procedural and substantive rulings. Under the circumstances, "rough justice" and the Court's "overall sense of a suit" suggests that the most straightforward approach is to reduce the *Johnson I* Plaintiffs' fee request for this interim by the same amount of hours counsel worked on *Billingsley*.[27] By assuming that counsel worked the same number of hours on *Billingsley* and *Johnson II*, the Court can approximate the number of hours counsel worked only on *Johnson I* and arrive at an amount of time reflecting the work reasonably required to achieve the favorable results won by the *Johnson I* Plaintiffs. Therefore, the Court hereby awards the *Johnson I* Plaintiffs a reasonable attorney's fee in the amount of $236,437.50, representing 945.75 hours of work at a rate of $250.00 per hour, plus compound interest.

As for expenses, the *Johnson I* Plaintiffs request expenses in the amount of $97,966.10 for this interim. Defendant takes the same approach with expenses as it did with attorney's fees

---

[26] *Fox*, 563 U.S. at 838.

[27] *Id.*

and argues that the Court should not award any expenses attributable to *Johnson II*. The Court should reduce the request for this interim by the same amount of expenses Plaintiffs had previously assigned to *Billingsley*, $63,500.16. The Court finds that this approach to expenses suffers from a number of problems that did not arise in evaluating attorney time. Unlike counsel's billing records, the records on the *Johnson I* Plaintiffs' expenses for the pretrial phase of the case total only four pages. Although some expenses listed in *Billingsley*'s record appear to be shared with the "*Johnson* case," many more of the expenses in *Billingsley* appear to be entirely specific to that case. Likewise, many of the expenses in *Johnson I* and *Johnson II* appear to be specific to those cases. Some are clearly related only to *Johnson I*. In short, the Court can make a more precise determination of the expenses without resorting to an across-the-board reduction.

The Court finds that the *Johnson I* Plaintiffs are entitled first to all of their expenses incurred prior to January 9, 2004, the date *Johnson II* was filed. Defendant correctly argues that some portion of counsel's time leading up to the filing of *Johnson II* was spent litigating the development of the replacement test. Still, the Court finds that these expenses were reasonably incurred to obtain relief on behalf of the *Johnson I* Plaintiffs for the simple fact that the *Johnson I* Plaintiffs could not have known whether they would receive relief on their claims about the 2000 process or whether the retest could somehow make them whole. Next, the Court finds that the *Johnson I* Plaintiffs are entitled to most expenses incurred between January 9, 2004, and the July 2005 trial and other post-trial proceedings. These expenses include deposition and witness fees and costs associated with the motion practice that resulted in Court orders on the *Johnson I* Plaintiffs claims for relief, including judgment as a matter of law on their Title VII disparate impact claim.

However, the Court will deduct any expenses which counsel noted the expense was split with *Billingsley*, a fact that suggests the expenses related to the 2002 process. The Court will also deduct expenses related to expert witnesses incurred after February 4, 2005, the date the Court granted the *Johnson I* Plaintiffs summary judgment on their Title VII disparate impact claim about the 2000 process. The *Johnson I* Plaintiffs have not shown that they reasonably incurred any expert expenses after the Court issued this ruling. None of the *Johnson I* Plaintiffs' other claims for relief required expert testimony or were supported with proof from an expert witness. It follows that any additional expense related to experts after February 4, 2005, was attributable only to *Johnson II*.

In light of these findings, the Court awards the *Johnson I* Plaintiffs expenses for this first interim in the amount of $49,209.95, plus compound interest.

## B. Supplemental Fees and Expenses from February 23, 2007 through August 23, 2012

For the period from February 23, 2007, through August 23, 2012 the *Johnson I* Plaintiffs seek attorney's fees in the amount of $188,623.50 for 580.38 hours at a rate of $325.00 per hour. The *Johnson I* Plaintiffs also seek expenses for this interim in the amount of $3,840.34. Of the total hours of counsel's time, Plaintiffs state that counsel has included 240.70 hours listed in his fee statement for *Billingsley*. The *Johnson I* Plaintiffs argue that the time entries "combined from both statements represent the total time it took to perform the work that led to the additional remedies and excellent results the *Johnson I* Plaintiffs obtained."[28] Defendant makes the same argument that the amount of hours is excessive because it largely represents time counsel spent pursuing claims related to the 2002 process. Citing Plaintiffs' previous request for $118,798.75

---

[28] Pls.' Supp. Br. 9 (ECF No. 699).

in fees in *Billingsley* for this same time period, Defendant requests a reduction in the attorney's fees by that amount to approximate the hours counsel worked pursuing claims in *Johnson II*. Defendant does not address the fact that the fee petition also includes hours previously assigned to *Billingsley*.

The Court finds that the *Johnson I* Plaintiffs are not entitled to the full fee requested in their briefs. The *Johnson I* Plaintiffs' supplemental brief concedes that the fee petition includes 240.70 hours from counsel's billing record in *Billingsley*. Defendant does not challenge this specific feature of the fee petition and instead argues for an across-the-board reduction of $118,798.75. The Court finds that a reduction in this amount fairly approximates counsel's time spent litigating post-trial claims for relief related to the 2002 process in *Billingsley* and *Johnson II*. Therefore, the Court will award the *Johnson I* Plaintiffs a reasonable attorney's fee in the amount of $69,824.75, plus compound interest. For similar reasons, the Court awards the *Johnson I* Plaintiffs their expenses for this phase of the case in the amount of $1,902.84, plus compound interest, representing the amount of expenses sought in Plaintiffs' briefs less the $1,937.50 in expenses attributed to *Billingsley*.

## C. Supplemental Fees and Expenses from August 24, 2012 through March 18, 2013

For the period from August 24, 2012, through March 18, 2013, the *Johnson I* Plaintiffs seek attorney's fees in the amount of $26,016.25 for 80.05 hours at a rate of $325.00 per hour. The *Johnson I* Plaintiffs argue that the Court previously approved 89.20 hours at $325 per hour for counsel's time during this same phase of the case. Counsel has now removed an additional 9.15 hours from his billing statement, representing work done relating to the invalidation of the 2002 process and the entry of the judgment in the *Billingsley* case. Defendant argues that the

exhibit does not break out counsel's work for *Billingsley*, and therefore, it is impossible for the City to determine what portion of the hours listed in the fee statement related only to *Johnson I*. Based on its own review of the exhibits, the Court finds that nearly all of the time entries in counsel's fee statement relate to litigation over attorney's fees and appellate issues. It is not clear to the Court that any of counsel's time is divisible among the three cases. It is likely the parties would have filed the same motions even if Judge Donald had ruled in the City's favor as to the 2002 process. The Court finds no reason then to reduce the fees sought by the *Johnson I* Plaintiffs. Therefore, the Court will award the *Johnson I* Plaintiffs a reasonable attorney's fee in the amount of $26,016.25, plus compound interest.

## D. Post-Remand Fees and Expenses

Finally, for the period from October 27, 2014, through August 23, 2016, the *Johnson I* Plaintiffs seek attorney's fees in the amount of $38,886.25 for 119.65 hours at a rate of $325.00 per hour. The Court finds that the *Johnson I* Plaintiffs reasonably incurred these fees to defend the judgment in their favor as to the 2000 process. Therefore, the Court will award them $38,886.25.

## E. Summary of Attorney's Fees and Expenses Awarded

The Court awards the *Johnson I* Plaintiffs their attorney's fees and expenses as follows:

• $236,437.50, plus compound interest, in attorney's fees for hours worked from the outset of the case through February 2007;

• $69,824.75, plus compound interest, in attorney's fees for hours worked from February 23, 2007, though August 23, 2012;

• $26,016.25, plus compound interest, in attorney's fees for hours worked from August 24, 2012, through March 18, 2013;

• $38,886.25 in attorney's fees for hours worked from October 27, 2014, through August 23, 2016;

• $49,209.95, plus compound interest, in expenses for the period from the outset of the case through February 2007;

• $1,902.84, plus compound interest, in expenses for the period from February 23, 2007, though August 23, 2012.

The Court finds that this award of attorney's fees and expenses does not represent a windfall for counsel for the *Johnson I* Plaintiffs. Defendant's argument to reduce the award further is without merit.

## CONCLUSION

The Court awards the *Johnson I* Plaintiffs a total of $371,164.75 in attorney's fees, plus compound interest as noted, as well as $51,112.79 in expenses, plus compound interest. Therefore, Plaintiffs' Motion for Attorney's Fees is **GRANTED in part, DENIED in part**.

**IT IS SO ORDERED.**

**s/ S. Thomas Anderson**
S. THOMAS ANDERSON
UNITED STATES DISTRICT JUDGE

Date: September 26, 2016.